PEATROSS, J.
 

 |,In this suit for declaratory judgment, Defendant/Plaintiff in Reconvention Louisiana Energy Consultants, Inc. (“LEC”), appeals the judgment of the trial court sustaining Plaintiffs’, Steven Bogues,
 
 et al,
 
 (“Plaintiffs/lessors”) Exceptions of No Cause of Action and Vagueness and dismissing LEC’s Reconventional Demand. For the reasons stated herein, we affirm.
 

 FACTS
 

 Plaintiffs are the lessors of mineral interests in an aggregate of 68 acres located in DeSoto Parish, Louisiana. There are 22 leases involved in this matter and LEC is the successor-in-interest to the original lessee by way of assignment.
 
 [1]
 
 On February 20, 2009, Plaintiffs/lessors filed suit seeking a declaratory judgment terminating the leases and for damages. The suit claimed that, while the lessee had drilled and produced from a well on the property starting in 1997, it had failed to timely pay royalties and operate the leasehold as a reasonable and prudent operator. The
 
 *1130
 
 suit also alleged that the lessee had breached an implied covenant of reasonable development by failing to conduct further exploration and was currently in the process of trying to farm out the deep rights under the leases by negotiating with Chesapeake Operating, Inc., and XTO Energy, Inc. Plaintiffs/lessors sought damages for unpaid revenues derived from production and a judgment declaring the leases terminated.
 

 |2LEC filed aclaim in reconvention seeking damages under La. C.C. art. 2315 for intentional tort and for violations of the Louisiana Unfair Trade Practices Act (“LUTPA”), La. R.S. 51:1401,
 
 et seq.
 
 Generally, LEC alleged that Plaintiffsfiessors had engaged in a campaign to discredit LEC in its negotiations with third parties on farm-out agreements despite the fact that LEC had paid all royalties due and otherwise maintained its obligations under the leases. LEC alleged that this was done so that Plaintiffsfiessors could seek cancellation of the leases and deal directly with the third parties for development of the deep rights on more favorable terms to Plaintiffsfiessors. In order to bring its claim under the purview of LUTPA, LEC contended that Plaintiffsfiessors were “potential business competitors” of LEC arising from Plaintiffsfiessors’ efforts to cancel the leases so that they could further develop the property themselves.
 

 Plaintiffsfiessors responded to the Re-conventional Demand by filing Exceptions of Vagueness, No Right of Action and No Cause of Action. Plaintiffsfiessors alleged that LEC has no right of action and that its “loosely alleged” claims failed to state a cause of action in defamation or tort and failed to state a cause of action under LUTPA. The exceptions were sustained by the trial judge and LEC was given 30 days to amend its Reconventional Demand. LEC then filed an Amended Reconven-tional Demand and Plaintiffsfiessors reurged their exceptions, arguing that LEC simply restated the allegations of the original Reconventional Demand.
 

 The trial judge again sustained the exception of no cause of action and vagueness and did not rule on the exception of no right of action. |sFollowing a determination by this court that the judgment was final for purposes of appeal, the appeal was allowed to proceed.
 

 DISCUSSION
 

 A “cause of action,” when used in the context of the peremptory exception of no cause of action, refers to the operative facts that give rise to the plaintiff’s right to judicially assert the action against the defendant.
 
 White v. St. Elizabeth B.C. Board of Directors,
 
 45,213 (La.App.2d Cir.6/2/10), 37 So.3d 1139. The purpose of the exception of no cause of action is not to determine whether the plaintiff will prevail at trial, but is to ascertain if a cause of action exists.
 
 “We The People” Paralegal Services, L.L.C. v. Watley,
 
 33,480 (La.App.2d Cir.8/25/00), 766 So.2d 744. The peremptory exception of no cause of action tests the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition.
 
 Gipson v. Fortune,
 
 45,021 (La.App.2d Cir.1/27/10), 30 So.3d 1076,
 
 writ denied,
 
 10-0432 (La.4/30/10), 34 So.3d 298. The exception is triable on the face of the petition; and, for the purpose of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true.
 
 Fink v. Bryant,
 
 01-0987 (La.11/28/01), 801 So.2d 346.
 

 The burden of demonstrating that the petition states no cause of action is upon the mover.
 
 Scheffler v. Adams and Reese, LLP,
 
 06-1774 (La.2/22/07), 950 So.2d 641;
 
 Wright v. Louisiana Power & Light,
 
 06-1181 (La.3/9/07), 951 So.2d 1058. In reviewing rulings on exceptions of no
 
 *1131
 
 cause of action, courts may consider exhibits attached to the petition in determining 14whether the law extends a remedy to the plaintiff under the factual allegations of the petition.
 
 Kuebler v. Martin,
 
 578 So.2d 113 (La.1991);
 
 Creamer Brothers, Inc. v. Hicks,
 
 39,799 (La.App.2d Cir.6/29/05), 907 So.2d 880.
 

 An appellate court’s review of a trial court’s ruling sustaining an exception of no cause of action is
 
 de novo
 
 because the exception raises a question of law and the trial court’s decision is based only on the sufficiency of the petition.
 
 Fink, supra.
 
 The essential question is whether, in the light most favorable to plaintiff and with every doubt resolved in plaintiffs favor, the petition states any valid cause of action for relief.
 
 Wright, supra.
 
 When the grounds upon which an exception of no cause of action is based may be removed by amendment of the petition, the judgment sustaining the exception must order an amendment within a specified delay.
 
 “We The
 
 People”
 
 Paralegal Services, L.L.C., supra.
 

 In the case
 
 sub judice,
 
 LEC has asserted claims of intentional tort under La. C.C. art. 2315 and violations of LUTPA. As previously stated, following the first ruling of the trial judge sustaining the exceptions, LEC was afforded an opportunity to amend its claims in reconvention. We have conducted a
 
 de novo
 
 review of LEC’s Amended Reconventional Demand and concur with the trial judge that LEC has failed to state a cause of action under either theory.
 

 |
 
 -JLUTPA
 

 Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are prohibited by law. La. R.S. 51:1405(A). La. R.S. 51:1409 provides, in pertinent part:
 

 A. Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages. If the court finds the unfair or deceptive method, act, or practice was knowingly used, after being put on notice by the attorney general, the court shall award three times the actual damages sustained. In the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney fees and costs. Upon a finding by the court that an action under this Section was groundless and brought in bad faith or for purposes of harassment, the court may award to the defendant reasonable attorney fees and costs.
 

 The definition portion of LUTPA is found in La. R.S. 51:1402, which provides, in pertinent part:
 

 (1) “Consumer” means any person who uses, purchases, or leases goods or services.
 

 [[Image here]]
 

 (3) “Consumer transaction” means any transaction involving trade or commerce to a natural person, the subject of which transaction is primarily intended for personal, family, or household use.
 

 * * *
 

 (8) “Person” means a natural person, corporation, trust, partnership, incorporated or unincorporated association, and any other legal entity.
 

 (9) “Trade” or “commerce” means the advertising, offering for sale, sale, or distribution of any services and any
 
 *1132
 
 property, corporeal or incorporeal, immovable or movable, and any other article, commodity, or thing of value wherever situated, andJjjincludes any trade or commerce directly or indirectly affecting the people of the state.
 

 As a threshold matter, recall that the trial judge did not sustain Plaintiffs/lessors’ exception of
 
 no right of action
 
 as to the LUTPA claim. The supreme court has recently interpreted and explained the right of action, or standing, to recover for violations of LUTPA in
 
 Cheramie Services, Inc. v. Shell Deepwater Production, Inc.,
 
 09-1633 (La.4/23/10), 35 So.3d 1053. The supreme court recognized and held that section 1405(A) grants a
 
 right of action
 
 to “[a]ny person who suffers any ascertainable loss” from a violation of this prohibition.
 

 The parties in the instant case presented argument to the trial court and to this court concerning Plaintiffs/lessors’ alleged status as potential business competitors of LEC and the bearing that Plaintiffsfies-sors’ status has on resolution of this matter. The supreme court in
 
 Cheramie, supra,
 
 expressly held that LUTPA is not limited to consumers and business competitors, abrogating any prior ruling to the contrary. The supreme court further stated that LUTPA applies to any person who suffers a loss due to the unfair methods and deceptive business practices of another. Our analysis, therefore, is not concerned with whether LEC has a right of action under LUTPA by virtue of the Plaintiffs/lessors’ status,
 
 i.e.,
 
 whether the parties fit into the class of persons the statute was intended to protect.
 

 The critical issue before us, rather, is whether the allegations made by LEC state a
 
 cause of action
 
 under LUTPA— whether facts were alleged that, if taken as true, constitute the type of conduct to which the prohibitions of LUTPA were designed to extend. In this regard, the supreme court in
 
 \7Cheramie
 
 went on to explain that “it has been left to the courts to decide, on a case-by-case basis, what conduct falls within the statute’s prohibition.”
 
 See also Dufau v. Creole Engineering, Inc.,
 
 465 So.2d 752 (La.App. 5th Cir.),
 
 writ denied,
 
 468 So.2d 1207 (La.1985).
 

 In order to recover under LUTPA, a plaintiff must prove “some element of fraud, misrepresentation, deception, or other unethical conduct” on the part of the defendant.
 
 Cheramie, supra.
 
 The plaintiff must show that the alleged conduct “offends established public policy and ... is immoral, unethical, oppressive, unscrupulous or substantially injurious.”
 
 Id.
 
 Quoting from
 
 Turner v. Purina Mills, Inc.,
 
 989 F.2d 1419 (5th Cir.1993), the supreme court in
 
 Cheramie
 
 further explained:
 

 LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions. The statute does not forbid a business to do what everyone knows a business must do: make money. Businesses in Louisiana are still free to pursue profit, even at the expense of competitors, so long as the means used are not egregious. Finally, the statute does not provide an alternate remedy for simple breaches of contract. There is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes. (Internal citations omitted.)
 

 In addition, in concurring with the majority in
 
 Cheramie,
 
 Justice Johnson noted that the range of prohibited practices under LUTPA is extremely narrow.
 
 Id.
 

 Against this backdrop, we examine the following allegations stated in LEC’s Amended Reconventional Demand:
 

 5.
 

 Beginning in July 2008 and before, plaintiffs have been engaged in a joint
 
 *1133
 
 effort or conspiracy to cause harm to LEC by making knowingly false public statements and allegations 18about LEC’s activities as operator in a fraudulent effort to have the leases terminated and/or to sufficiently cloud the rights, title and status of LEC as lessee/operator so as to prevent LEC from farming out or otherwise further develop its interest in the leases. The knowingly false statements include statements that LEC has never paid royalties due under the Leases; that it had not operated the Leases as a reasonable and prudent operator and that it had not reasonably developed the Leases. The existence of the conspiracy was revealed in a letter dated July 28, 2008 authored by Thomas Paul Brown and Frances Sue Mobley Brown in which they solicited other members of the plaintiffs group to join them in their illegal efforts to avoid their obligations under the Leases. The Browns held public meetings at the Stonewall Library in Stonewall, Louisiana on July 30, 2008; August 11, 2008; September 10, 2008 and October 1, 2008. Those meetings were attended by other plaintiffs and by third parties who are not plaintiffs. Plaintiffs attended the meetings and joined the conspiracy and the efforts to harm LEC by making and/or adopting the knowingly false statements outlined above.
 

 6.
 

 The conspiracy and efforts to harm LEC culminated in the filing of the present lawsuit against LEC in February 2009. The lawsuit contains knowingly false statements by plaintiffs to the effect that LEC has never paid royalties due under the Leases; that it had not operated the Leases as a reasonable and prudent operator and that it had not reasonably developed the Leases. These statements were sworn to by the plaintiffs as true in verifying affidavits to the petition and were made with the malicious intent to cause harm to LEC by having the leases terminated and/or sufficiently clouding the rights, title and status of LEC as lessee/operator so as to prevent LEC from farming out or otherwise further develop its interest in the Leases. In their depositions taken on May 20, 2009, plaintiffs Thomas Brown, the City of Stonewall (through its mayor Curtis McCune) and the Salem Baptist Church (through its representative Curtis McCune) admitted that their statements that they had never been paid royalties under the Leases were not true and that their purpose in organizing the plaintiffs’ group, in making the false statements in the lawsuit and otherwise was to have the leases terminated and to sufficiently cloud the rights, title and status of LEC as lessee/operator so as to prevent LEC from farming out or otherwise further develop its interest in the Leases.
 

 _1⅛8.
 

 LEC believes that the knowingly false statements by all plaintiffs were made directly to, or were otherwise communicated to representatives of a number of oil and gas companies that were potentially interested in pursuing joint development activities of the Leases with LEC ... none were willing to pursue any sort of arrangement for development of the Leases with LEC. This result was precisely what was intended by the plaintiffs and was the object of their conspiracy.
 

 It is undisputed that the lessors were unhappy with the leasing arrangement with J & K Petroleum and, thus, with LEC, and the performance of LEC as operator. We do not find dishonest, immoral or egregious, however, allegations that the lessors attended meetings to discuss their leases with other similarly situ
 
 *1134
 
 ated lessors. Further, LEC’s
 
 belief
 
 that lessors communicated unfavorable opinions of LEC to others does not constitute the type of egregious conduct envisioned by the legislature in LUTPA.
 

 Simply stated, this matter involves lessors and a lessee to 22 mineral lease contracts, all of whom are dissatisfied with the conduct of the opposing party(ies). The lessors sued the lessee and the lessee reconvened, claiming that it has been unable to farm out the leases at issue because of the dispute -with the lessors and based upon its belief that lessors had been misrepresenting the lessee to other oil and gas companies. While this case is not “a simple breach of contract” case, we find a “great deal of daylight” between these allegations and the scope of unfair and deceptive conduct in trade and commerce that LUTPA was intended to proscribe.
 
 Cheramie, supra, citing Turner, supra.
 
 We further find this interpretation to be | insupported by the fact that the development of consumer protection laws was essentially a response to consumer dissatisfaction with their treatment in the marketplace. See
 
 Cheramie, supra,
 
 J. Johnson concurring,
 
 citing
 
 Breeden and Lovett, Louisiana’s New Unfair Trade Practice and Consumer protection Law, 20 La. B.J. 307 (1973).
 

 For these reasons, our
 
 de novo
 
 review leads this court to agree with the trial court’s judgment sustaining Plaintiffs/lessors’ exception of no cause of action regarding LEC’s claim under LUTPA.
 

 Tortious Interference with Business
 

 LEC also asserts that the Amended Reconventional Demand sufficiently pleads a cause of action
 
 for
 
 tortious interference with business under La. C.C. art. 2315. LEC argues that the actions of the lessors improperly influenced its ability to conduct business with third parties,
 
 ie.,
 
 further development of the leases with other oil and gas companies. According to LEC, the lessors did this by knowingly making false statements to other lessors to influence them to break them leases with LEC and to other companies to cast doubt on LEC as a prudent operator.
 

 On the other hand, Plaintiffs/lessors suggest that this purported cause of action is a melding of an improperly pleaded tortious interference with contract claim and a defamation claim.
 

 The Restatement (Second) of Torts § 766B provides:
 

 One who intentionally and improperly interferes with another’s prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of |n (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring the prospective relation.
 

 Louisiana courts have recognized a cause of action for tortious interference with business relations.
 
 Junior Money Bags, Ltd. v. Segal,
 
 970 F.2d 1 (5th Cir.1992);
 
 Dussouy v. Gulf Coast Inv. Corp.,
 
 660 F.2d 594 (5th Cir.1981). The cause of action for tortious interference with business derives from La. C.C. art. 2315. Tor-tious interference is based on the principle that the right to influence others not to enter into business relationships with others is not absolute.
 
 Junior Money Bags, Ltd., supra, citing Ustica Enterprises, Inc. v. Costello,
 
 434 So.2d 137 (La.App. 5th Cir.1983). Louisiana law protects the businessman from “malicious and wanton interference,” though it permits interferences designed to protect legitimate interests of the actor.
 
 Dussouy, supra.
 
 A plaintiff bringing a claim for tortious interference with business must ultimately
 
 *1135
 
 show “by a preponderance of the evidence that the defendant improperly influenced others not to deal with the plaintiff.”
 
 Junior Money Bags, Ltd,., supra.
 
 Significantly, it is not enough to allege that a defendant’s actions affected plaintiffs business interests; the plaintiff must allege that the defendant actually prevented the plaintiff from dealing with a third party.
 
 Ustica, supra.
 

 The jurisprudence has viewed this cause of action with disfavor. In
 
 JCD Mktg. Co. v. Bass Hotels and Resorts, Inc.,
 
 01-1096 (La.App. 4th Cir.3/6/02), 812 So.2d 834, the court explained:
 

 Louisiana courts have limited this cause of action by imposing a malice element, which requires that the plaintiff show the | ^defendant acted with actual malice. Although its meaning is not perfectly clear, the malice element seems to require a showing of spite or ill will, which is difficult (if not impossible) to prove in most commercial cases in which conduct is driven by the profit motive, not by bad feelings. In fact, there appear to be no reported cases in which anyone actually has been held liable for the tort. In order to sustain a claim for tortious interference with business relations, actual malice must be pleaded in the complaint. (Internal citations omitted.)
 

 Applying the above principles to the allegations in the Reconventional Demand of LEC, we conclude that LEC has failed to state a cause of action under this very limited theory of recovery in Louisiana. First, there are no factual allegations describing any conversation between a particular plaintiff/lessor and any particular entity with whom LEC was attempting to confect a business relationship. Second, the allegations of the Reconventional Demand fall short of the malice, ill will or spite element that must be pleaded in the petition to sufficiently state a cause of action for tortious interference with business.
 
 JCD Mktg. Co., supra.
 

 In light of our conclusions herein, we pretermit any discussion of the ruling on the exception of vagueness.
 

 CONCLUSION
 

 For the foregoing reasons, the judgment of the trial court granting the Exception of No Cause of Action and Vagueness and dismissing the Reconventional Demand of Louisiana Energy Consultants, Inc., is affirmed. Costs of appeal are assessed to Louisiana Energy Consultants., Inc.
 

 AFFIRMED.
 

 [1]
 

 . The original lessee was J & K Petroleum, L.L.C., also a named defendant in the action for declaratory judgment. In June 1997, J & K Petroleum assigned to LEC all of its right, title and interest (reserving an overriding royalty interest) in the subject leases. J & K Petroleum is not involved in the current appeal.