BROWN, Chief Judge.
| plaintiffs, James P. Hardy, Jr.; Hardy Resources, LLC; Evergreen Processing, LLC, f/k/a B & H Resources, LLC, Mary Hardy, Hardy Energy Services, Inc., Elite Coil Tubing Solutions, LLC, Northstar Farms, LLC, and John Hardy, appeal from a trial court judgment granting an exception of no cause of action and dismissing their claims against defendant, Michael Shae Easterling. After review, we hold that the trial court did not err in granting defendant’s exception of no cause of action; however, pursuant to La. C.C.P. art 934, the trial court should have allowed plaintiffs leave to amend their petition to state a valid cause of action. Thus, we reverse the judgment of the trial court and remand for further proceedings.

Facts and Procedural History

The facts of this case are drawn from the allegations contained in plaintiffs’ petition, which we accept as true for the purpose of reviewing the grant of an exception of no cause of action. Webb Const., Inc. v. City of Shreveport, 27,761 (La.App.2d Cir.12/06/95), 665 So.2d 653.
The petition is 47 pages with 219 paragraphs of allegations. The petition alleges that in the spring of 2007, plaintiffs were approached by George Bartmess, an Arkansas resident who owned a 3,600-acre ranch in Izard County, Arkansas. Bart-mess and plaintiffs felt the land contained special fractionate sand that could be mined commercially. The parties entered into a joint venture to inspect, drill, test and evaluate the land. On June 15, 2007, *1182 the parties executed a partnership agreement, creating B & H Resources, LLC, now known as Evergreen Processing, LLC, to perform mining operations on the Bartmess land. Plaintiffs and Bartmess each held 12a one-half ownership interest in the corporation. John Hardy and Bart-mess were to be co-managers. Plaintiffs were to supply funds, equipment, and other resources to mine and market the sand. Bartmess contributed 249 acres of land to the company along with servitudes and rights of ingress and egress. Bartmess and his son, Bruce, were also to receive monthly salaries, company vehicles, royalties for the sand, and other benefits.
In 2008, plaintiffs alleged that they discovered that Bartmess had committed acts designed to interfere with B & H’s interests. Plaintiffs contend that Bartmess used confidential and proprietary information belonging to the partnership to solicit others to enter into partnerships to conduct sand mining and sales operations on Bartmess’s land.
On December 2, 2008, plaintiffs and Bartmess reached a deal which provided that the plaintiffs would buy out Bart-mess’s ownership interest in B & H. As a part of this deal, Bartmess was to exercise an option he held over a 198-acre tract— purchasing the land and then selling to plaintiffs a 105-acre portion for $210,000. Plaintiffs alleged that the 105-acre portion of this tract was vital to their mining operations, a fact of which Bartmess was aware. Plaintiffs alleged that Bartmess allowed his option to purchase the 198-acre tract to expire. Plaintiffs note that defendant, Michael Shae Easterling, executed a buy-sell agreement on the property on January 19, 2009, and purchased the tract in March 2009. Plaintiffs further alleged that they contacted Easterling about buying the land, but he did not want to sell, claiming that he intended to use the land for hunting. In late 2009, however, East-erling was alleged to have approached plaintiffs, offering to sell the 1 sentire 198-acre tract. Plaintiffs alleged that they had no choice but to purchase the property at a higher price than they had agreed to with Bartmess.
Plaintiffs alleged that Bartmess and Easterling were “close, long-time” friends. They claim that Bartmess contacted East-erling, a resident of Franklin Parish, Louisiana, and the two conspired together to conduct mining operations in competition with plaintiffs. According to plaintiffs, the two men colluded over the sale of the 198-acre tract, and defendant compensated Bartmess for his part in the transaction.
At some point prior to the present action, plaintiffs filed suit against Bartmess in federal court in Arkansas. Plaintiffs alleged that Easterling was not named in that suit because they were unaware of his involvement at the time it was filed; however, after learning of Easterling’s involvement, they did not amend their lawsuit because they wished to preserve diversity jurisdiction. Plaintiffs alleged that they reached a confidential settlement with Bartmess.[1]
On March 3, 2010, plaintiffs filed the present action against Easterling in Franklin Parish. The greatest part of the 219-paragraph petition concerns the alleged wrongdoing of George and Bruce Bartmess who were not named as defendants. The petition alleged numerous claims under both Louisiana and Arkansas law.[2]
*1183 ^Defendant filed an exception of vagueness, a peremptory exception of nonjoinder of parties, and a peremptory exception of no cause of action.
The trial court noted that it could not discern what actions of Easterling “could be deemed unfair or deceptive, in light of the absence of any relationship between the parties prior to the purchase by East-erling of the [198-] acre tract,” nor were there any allegations that Easterling “intentionally misrepresented the value of the property in question” or induced plaintiffs “to buy the property at a price which was substantially higher than its actual value.” The trial court remarked that “[t]he facts plead[ed] herein, as applied to Easterling, simply do not state a cause of action under any theory of recovery.” Plaintiffs’ lawsuit was dismissed. Thereafter, plaintiffs filed this timely appeal.

Discussion

An exception of no cause of action tests the legal sufficiency of the petition by questioning whether the law affords a remedy based on the facts alleged in the petition. Everything on Wheels Subaru v. Subaru South, Inc., 616 So.2d 1234 (La.1993); Bogues v. Louisiana Energy Consultants, LLC, 46,434 (La.App.2d Cir.08/10/11), 71 So.3d 1128. No evidence may be introduced to support or controvert an exception of no cause of action. La. C.C.P. art. 929. The exception is triable on the face of the petition, with the well-pleaded facts accepted as true for the purpose of determining the issues raised by the exception. McCarthy v. Evolution Petroleum Corp., 47,907 (La.App.2d Cir.02/27/13), 111 So.3d 446; Bogues, supra.
Whether a petition states a cause of action is a question of law, and, on appeal, a judgment sustaining an exception of no cause of action is subject to a de novo standard of review. Bogues, supra.
La. C.C.P. art 934 provides:
When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgement sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with an order to amend, the action, claim, demand, issue, or theory shall be dismissed.
The decision to allow amendment of a pleading to cure the grounds for a peremptory exception is within the discretion of the trial court. Downs v. Hammett Props., Inc., 39,568 (La.App.2d Cir.04/06/05), 899 So.2d 792.
Appellate courts have concluded that Art. 934 does not require a court to give leave to amend a petition if doing so would be futile, meaning if it is apparent that the defect could not be corrected by amendment. Magill v. Lowery, 43,261 (La.App.2d Cir.05/07/08), 990 So.2d 18, writ denied, 08-1237 (La.10/10/08), 993 So.2d 1283.[3]
*1184 Plaintiffs offer numerous assignments of error upon appeal, challenging the dismissal of several of their original claims for failure to lístate a cause of action. Given the de novo nature of this review, we examine each individually.

Fraud (Louisiana Law)

La. C.C. art 1953 provides:
Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.
La. C.C. art. 2324 provides that he or she who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.
An independent cause of action for civil conspiracy does not exist in Louisiana; rather the actionable element of article 2324 is the intentional tort that the conspirators agreed to commit and committed, in whole or in part, causing plaintiffs injury. Able Sec. and Patrol, LLC v. State of La., 569 F.Supp.2d 617 (E.D.La.2008). A conspiracy may proven by circumstantial evidence. Hall v. Lilly, 29,624 (La.App.2d Cir.06/18/97), 697 So.2d 676.
The Code of Civil Procedure requires that in pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity. La. C.C.P. art. 856. Malice, intent, knowledge, and other condition of mind of a person may be alleged generally. Id.
It is unclear from the petition what acts of fraud plaintiffs are alleging against Easterling. The parties had no relationship or even contact until the purchase of the 198-acre tract. Plaintiffs allege no misrepresentations or suppressions made by Easterling. The only communication alleged between |7the parties sub judice was when plaintiffs attempted to purchase the property from Easterling after Bart-mess failed to exercise his option. Bart-mess had informed plaintiffs that the then unknown buyer of the property would be willing to sell to them. In February 2009, however, Easterling declined to sell the tract and asserted that he intended to use the land for recreation. The next direct mention of Easterling in the petition is when plaintiffs allege that he contacted plaintiffs, nearly a year after they attempted to purchase the land, offering to sell the tract.
Plaintiffs claim that Bartmess “advised” Easterling and shared certain confidential information with Easterling. However, the petition does not allege what information was shared, rather only that Bartmess “advised” Easterling about the property. Even accepting that confidential information about the 105-acre tract was shared, Easterling had no duty to protect plaintiffs’ interests in ensuring that the terms of the private buy-out agreement between plaintiffs and Bartmess were executed.
It remains unclear what suppressions or misrepresentations defendant personally made to plaintiffs regarding the sale of the property. The only misrepresentations that can be inferred from the petition are those made by Bartmess in concealing his failure to exercise his option to purchase the tract timely and in revealing confidential business information.

Fraud (Arkansas Law)

Plaintiffs likewise argue that they have adequately pleaded a cause of action for fraud and conspiracy to defraud under Arkansas law. As in Louisiana, civil conspiracy in Arkansas is dependent upon the existence of |sunderlying damages. The Arkansas Supreme Court has explained civil conspiracy thus:
To prove a civil conspiracy, a plaintiff must show that two or more persons have combined to accomplish a purpose *1185 that is unlawful or oppressive or to a accomplish some purpose, not in itself unlawful, oppressive or immoral, but by unlawful, oppressive or immoral means, to the injury of another. A civil conspiracy is not actionable in and of itself, but a recovery may had for damages caused by acts committed pursuant to the conspiracy. A civil conspiracy is an intentional tort which requires a specific intent to accomplish the contemplated wrong. (Internal citations omitted)
Faulkner v. Arkansas Children’s Hosp., 347 Ark. 941, 69 S.W.3d 393, 406 (2002).
The petition does not state any misrepresentation or omission made by Easter-ling which induced plaintiffs into buying the property at his asking price. Plaintiffs allege only that defendant admitted that Bartmess told him about the property in question and that Easterling stated that he wanted to use it for hunting. Nearly a year later, Easterling sold the land to plaintiffs. Even if it were alleged that Bartmess had revealed the vital nature of the tract, this still does not show that Easterling made any false representations to plaintiffs. We agree with the trial court that there are no allegations that defendant misstated the price of the land.
Therefore, plaintiffs failed to state a cause of action for fraud under either Louisiana or Arkansas law.

Tortious Interference with Contractual Relations (Arkansas Law)

Plaintiffs first argue that they have adequately pled a cause of action for tortious interference with contractual relations under Arkansas law. The elements of tortious interference of contract that must be proven are: (1) the ^existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.[4] K.C. Props. of N.W. Ark., Inc. v. Lowell Inv. Partners, LLC, 373 Ark. 14, 280S.W.3d 1 (2008).
The petition is rife with allegations of Bartmess seeking out third parties to set up such an operation. The first allegation mentioning defendant states that:
BARTMESS engaged in a campaign of using plaintiffs’ monies and assets to solicit others to drill and test for special sand on BARTMESS land and BART-MESS made efforts to secure a different partner, defendant EASTERLING, to conduct sand mining and sale operations.
The petition fails to allege facts sufficient to state a cause of action against defendant for tortious interference with contractual relations regarding establishing a competing mining operation. Further, there are no allegations that Easter-ling established any sort of competitive operations.
| mRegarding the purchase and sale of the 105 acres, it was Bartmess who breached the buy-out agreement by allowing his option to lapse. Plaintiffs had no other contractual agreement concerning *1186 the land when it was purchased by Easter-ling. The allegations in the petition show that it was Bartmess who cost plaintiffs the opportunity to initially purchase the tract.

Interference with Business Expectancy (Arkansas Law)

Arkansas law requires that to recover on a claim of tortious interference with business expectancy, a plaintiff must satisfy the same elements, noted above, that are applied to the tort of interference with contractual relations. K.C. Props. of N.W. Ark, Inc., supra; Stewart Title Guar. Co. v. American Abstract & Title Co., 363 Ark. 530, 215 S.W.3d 596 (2005). In Arkansas, the existence of a contractual relationship is not a prerequisite to maintain an action for tortious interference with business expectancy. Stewart Title Guar. Co., supra. Any prospective business relationship that would be of pecuniary value constitutes a valid business expectancy. Id. Some precise business expectancy or contractual relationship must be obstructed.[5] Id.
In With intent to interfere as the usual basis of the action, the cases have turned almost entirely upon the defendant’s motive or purpose, and the means by which he has sought to accomplish it. Id., citing, W. Page Keeton et al., Prosser & Keeton on the Law of Torts § 130, at 1009 (5th ed.1984).
Again, it is not alleged what specific actions by Easterling interfered with plaintiffs’ business expectancy, other than purchasing land that plaintiffs expected to be able to purchase from Bartmess. Rather, any interfering acts which may have occurred appear to be alleged against Bartmess.
Plaintiffs alleged that Bartmess sought contracts and partners and that he “intended” to have his son establish a competing business. They did assert that Bart-mess and Easterling tested sands from the Bartmess'land, but this falls short of showing that Easterling ever caused them a loss of business expectancy or actual damages through such action. Also, as noted above, Easterling had no relationship with plaintiffs and was free to “enter into secret negotiations” as he liked. Stewart Title Guar. Co., supra. Regarding the sale of the 105-acre tract, plaintiffs’ expectancy was that Bartmess would execute his obligations under the buy-out agreement. Plaintiffs had no agreements with the landowners themselves with which defendant could interfere.

Interference with Business Relations (Louisiana Law)

Louisiana law protects a businessperson from malicious or wanton interference, while permitting interferences designed to protect legitimate interests of the actor. Bogues, supra. The plaintiff in a tortious interference 112with business cause of action must show by a preponderance of evidence that the defendant improperly and maliciously influenced others not to deal with plaintiff. Id.; Heart’s Desire, LLC v. Edwards, 46,222 (La.App.2d Cir.04/27/11), 2011 WL 1630175. *1187 Louisiana jurisprudence has viewed the claim with disfavor and limited the cause of action by imposing a malice element which requires the plaintiff to show that the defendant acted with actual malice. Bogues, supra.[6]
There is no allegation of actual malice on the part of Easterling. The petition almost exclusively deals with the bad faith of Bartmess. Even in brief to this court, plaintiffs reference that it was Bartmess who “was scheming to rid himself of appellants,” not that Easterling was inducing Bartmess to breach his relationship with plaintiffs. It is clear from the petition that Bartmess was the one who sought out partners and intended to mine the sand to the exclusion of the plaintiffs. To read any such allegation of malice on the part of defendant would be conjecture. Because no more than a profit motive can be inferred from the allegations stated in the petition, plaintiffs failed to state a cause of action for tortious interference with business relations.

J¿¡LUTPA

The Louisiana Unfair Trade Practices Act provides, in pertinent part, that “[u]n-fair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are” ... “declared unlawful.” La. R.S. 51:1405. The statute further provides:
Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages.
La. R.S. 51:1409(A).
In order to recover under LUTPA, a plaintiff must prove some element of fraud, misrepresentation, deception, or other unethical conduct on the part of the defendant.[7] Bogues v. Louisiana Energy Consultants, LLC, 71 So.Sd at 1132. It has been left to the courts to decide, on a case-by-case basis, what conduct falls within the statute’s prohibition. Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc., 09-1638 (La.04/23/10), 35 So.3d 1053. To sustain a cause of action under LUTPA, the supreme court has promulgated a two-part test: 1) the person must suffer an ascertainable loss; and 2) the loss must result from another’s use of unfair methods of |, competition and unfair or deceptive acts or practices. Cheramie Servs., supra; NOLA 180 v. Treasure Chest Casino, LLC, 11-853 (La. 5 Cir. 03/27/12), 91 So.3d 446, writ denied, 12-0949 (La.06/15/12), 90 So.3d 1066.
*1188 Key to the trial court’s rationale regarding this issue was that plaintiffs were not a consumer or a business competitor of Easterling, or vice-versa. Correctly, the trial court noted that plaintiffs were in the mining business, while Easterling is not alleged to be in the mining business. Easterling stated that he purchased the 198-acre tract for recreational purposes. However, the supreme court has held that rather than being limited to consumers and business competitors, claims under LUTPA are available to any person who suffers any ascertainable loss as a result of violations of the statute. Cheramie, supra.
The only ascertainable loss sufficiently pled by plaintiffs is that they had to pay a higher purchase price for the land in question, which they allege was caused by the deception of Bartmess. In the transaction for the 105-acre tract, it was Bartmess, individually, who held the option on purchasing the property. As part of his buyout agreement, Bartmess was to purchase the property and sell it to B & H. Bart-mess never completed the transaction, allowing his option to lapse.
Easterling had no relationship with plaintiffs and owed them no duty in the original purchase of the property. Further, there was no allegation that Easter-ling acted deceptively in selling the property. The unfair methods complained of were employed by Bartmess when he breached the buy-out [ ^agreement. Therefore, plaintiffs’ loss, as alleged, was caused by Bartmess, not defendant.

ADTPA

Similar to LUTPA, the Arkansas Deceptive Trade Practices Act (“ADT-PA”) makes it unlawful to engage in any unconscionable, false, or deceptive act or practice in business, commerce, or trade, and it grants a private cause of action to any person who suffers actual damage or injury as a result of an offense or violation as defined in the statute. Texarkana Behavioral Assocs., LC v. Universal Health Servs., Inc., 748 F.Supp.2d 1008 (W.D.Ark. 2010), citing Ark. C. Ann. § 4-88-107(a)(10); § 4 — 88—113(f). However, not every tort or violation of law is unconscionable else that word would lose its legal meaning. Universal Coops., Inc. v. AAC Flying Serv., 2012 WL 1019582, (E.D.Ark.2012). An unconscionable action affronts the sense of justice, decency, or reasonableness. Baptist Health v. Murphy, 365 Ark. 115, 226 S.W.3d 800 (2006).
It is unclear what unconscionable actions Easterling allegedly committed. Regarding the alleged establishment of a rival mining operation, there are no allegations that Easterling personally took any action which caused actual damage to plaintiffs. Plaintiffs do not aver that Easterling engaged in any of the acts of sabotage that they allege against Bartmess.
Plaintiffs also do not allege any unconscionable acts regarding the sale of the 105-acre tract. They only allege that Easterling was informed the property was for sale by Bartmess and that he then purchased it from the | ^owners. Without more specific allegations, it is difficult to divine any actions taken by defendant which affront the sense of justice, decency or reasonableness.[8]

*1189
Conclusion

After review, we hold that trial court did not err in granting defendant’s exception of no cause of action. However, pursuant to La. C.C.P. art 934, the trial court should have allowed plaintiffs leave to amend their petition to state valid causes of action. We cannot say that such an allowance would be a vain or useless act; therefore, this case is remanded to the trial court for proceedings not inconsistent with this opinion. Plaintiffs are granted leave to amend their petition within a delay period of 30 days from the rendering of this opinion, if they are so able.
For the reasons set forth above, the judgment of the trial court is reversed. Costs of appeal are assessed equally against appellee and appellant.
Reversed and Remanded.

. Bartmess is now deceased.

. Plaintiffs sought damages to recover the increased costs of acquiring the 105-acre tract from defendant, increased expenses caused by delays in tlie project, lost investment funds, increased operation costs, increased market competition, costs for Bartmess's usage of equipment, damages caused by the loss and *1183 disclosure of confidential and proprietary information, damages to competitive position, lost economic opportunity, costs incurred in mitigating damages, loss of expected profits, damage to plaintiffs’ reputation, loss of business to partnership, legal fees and punitive damages under Arkansas law.

. Magill was a defamation case and this court found “[t]here is nothing in this record to persuade us that the plaintiff would have been able to cure these stricken allegations. Crucially, he never formally asked the trial court for leave to amend his pleadings. This has been held to result, in at least one of our other circuits, that the issue on appeal has been abandoned.” Magill, 990 So.2d at 20. We note that in the case sub judice plaintiffs never formally asked for leave to amend.

. In determining whether an actor's conduct intentionally interfering with contract or a prospective contractual relation of another is improper or not, consideration is given to:
(a) the nature of the actor’s conduct, (b) the actor’s motive, (c) the interests of the other with which the actor’s conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and the relations between the parties.
K.C. Props. of N.W. Ark., Inc., 280 S.W.3d at 11-12.

. ‘ The Arkansas Supreme Court has held that tortious interference with business expectancy is distinguishable from the privilege to compete:
In short, it is no tort to beat a business rival to prospective customers. Thus, in the absence of prohibition by statute, illegitimate means, or some other unlawful element, a defendant seeking to increase his own business may cut rates or prices, allow discounts or rebates, enter into secret negotiations behind the plaintiffs back, refuse to deal with him or threaten to discharge employees who do, or even refuse to deal with third parties unless they cease dealing with the plaintiff, all without incurring liability.
Stewart Title Guar. Co., 215 S.W.3d at 600-01, citing, W. Prosser, Law of Torts, § 130 (3rd ed.1971).

. The Bogues court approvingly noted reasoning from the Fourth Circuit which held:
Although its meaning is not perfectly clear, the malice element seems to require a showing of spite or ill will, which is difficult (if not impossible) to prove in most commercial cases in which conduct is driven by the profit motive, not by bad feelings. In fact, there appear to be no reported cases in which anyone actually has been held liable for the tort. In order to sustain a claim for tortious interference with business relations, actual malice must be pleaded in the compliant.
Id. at 1134, citing, JCD Mktg. Co. v. Bass Hotels & Resorts, Inc., 01-1096 (La.App. 4th Cir.03/06/02), 812 So.2d 834.

. The U.S. Fifth Circuit has cautioned:
LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or appropriate free enterprise transactions. The statute does not forbid a business to do what everyone knows a business must do: make money. Businesses in Louisiana are still free to pursue profit, even at the expense of competitors, so long as the means used are not egregious. Finally, the statute does not provide an alternate remedy for simple breaches of contract. There is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes. (Internal citations omitted)
Turner v. Purina Mills, Inc., 989 F.2d 1419 (5th Cir.1993).

. In addition to the above discussed assignments of error, plaintiffs claim that the trial court engaged in a conflict of laws analysis in its judgment, which they argue is inappropriate when examining a no cause of action. Louisiana jurisprudence provides little guidance as to whether a conflict of laws analysis is per se inappropriate when considering a peremptory exception of no cause action. Given that the trial court never explicitly made a ruling as to the choice of law, we need not consider the issue as it is not properly before us in this case.
*1189 Also, plaintiffs complain that the trial court committed reversible error when it opined in its reasons for judgment that "[fjrankly put, it appears to this Court that the real victim in all of this is Third Party Land Owners/Sellers who sold their land for a substantially lower price than its true value.’1 We disagree that this statement rises to the level of a factual finding, and such general observations are not appealable. We note that appeals are taken from the judgment, not the written reasons for judgment. Greater New Orleans Expressway Com'n v. Olivier, 02-2795 (La. 11/18/03), 860 So.2d 22. Therefore, this assignment is without merit.