Judgment rendered May 21, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,090-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

OGBONNAYA JOHN NWOHA                    Plaintiff-Appellant

versus

STATE OF LOUISIANA                      Defendants-Appellees
THROUGH GRAMBLING
STATE UNIVERSITY; AND THE
BOARD OF SUPERVISORS FOR
THE UNIVERSITY OF
LOUISIANA SYSTEM

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Lincoln, Louisiana
Trial Court No. 60,386

Honorable Bruce Edward Hampton, Judge

* * * * *

SMITH & NWOKORIE, LLC               Counsel for
By: Anselm Nnaemeka Nwokorie        Plaintiff-Appellant
    Brian G. Smith

DECUIR, CLARK & ADAMS, L.L.P.       Counsel for
By: Linda Jane Law Clark            Defendant-Appellee,
    Corey Lamar Pierce              Grambling State
    Monica G. Moton                 University

GREGORY STEPHEN BARKLEY  Counsel for
TIMOTHY R. WYNN          Defendant-Appellee,
Assistant Attorneys General   Board of Supervisors
                          for the University of
                          Louisiana System

\* \* \* \* \*

Before PITMAN, COX, and HUNTER, JJ.

**HUNTER, J.**

Plaintiff, Ogbonnaya John Nwoha, appeals a district court ruling granting motions for summary judgment, motion in limine, exception of lack of procedural capacity, peremptory exception of prescription, and peremptory exception of no cause of action in favor of defendants, State of Louisiana, through Grambling State University and the Board of Supervisors for the University of Louisiana System. For the following reasons, we affirm.

## FACTS

In 2006, defendant, Grambling State University ("GSU"), hired plaintiff, Dr. Ogbonnaya John Nwoha, as an assistant professor in the Economics department. In 2012, plaintiff gained tenure. Also in 2012, GSU merged the Accounting, Economics, and Computer Information Systems departments into one department known as "AEIS." Thereafter, some of the faculty members within AEIS began cross-teaching courses on an "as needed" basis. For example, plaintiff began teaching some basic computer information systems courses; and, similarly, some of the accounting and computer information systems professors taught basic economics courses.

In 2017, the Louisiana Board of Regents conducted an Academic Program Review and determined GSU's Bachelor of Science in Economics degree program would be discontinued due to low enrollment and a low degree completion rate.[1] GSU stopped admitting new students into the

---

[1] As a result of the review, GSU also discontinued its Master of Education in Educational Leadership. However, no staff members in the Department of Education were affected.

Economics program as of May 2017; however, the students who were currently enrolled were allowed to complete their degrees.[2]

In 2017, four professors were employed in the Economics program: Dr. Ghebre Keleta (hired in 1980), Dr. Matthew Uwakonye (hired in 2005), plaintiff (hired in 2006), and Dr. Daffney Felton (hired in 2009). Following a review of the faculty members' seniority and credentials, Dr. Ellen Smiley, GSU's Provost and Vice President of Academic Affairs, sent a memorandum to Rick Gallot, Jr., the then-President of GSU, stating as follows:

> Due to the cancellation of the Bachelor of Science (B.S.) in Economics degree program by the Louisiana Board of Regents last spring, I am recommending the termination of two tenured economics faculty members, Dr. Daffney Felton and Dr. Ogbonnaya Nwoba, effective May 11, 2018. A review of their credentials revealed that no other faculty positions within the University for which these two faculty members are academically qualified are available.

President Gallot signed the memorandum approving the terminations; and by letter dated August 1, 2017, he informed plaintiff the Economics program was being discontinued, and his faculty appointment was being terminated as of the end of the academic year, May 11, 2018, pending the approval of the Board of Supervisors for the University of Louisiana System ("the Board").[3] President Gallot also advised plaintiff to "contact the Office

_____

[2] GSU implemented a "teach-out" plan, whereby it would retain enough faculty necessary to teach upper-level economics courses to meet the needs of the 19 students remaining in the program. Two students graduated in May 2017, and two others changed their majors the following summer. Therefore, at the beginning of the Fall 2017 semester, only 15 students remained in the program, three of whom had completed all the required economics courses. It was determined that five of the remaining 12 students would be able to complete all upper-level Economics courses by Spring 2018. The seven students who had not completed the upper-level Economics courses were advised to meet with academic advisors to discuss changing their majors.

[3] According to defendants, GSU attempted to assist plaintiff and Dr. Felton in gaining employment by distributing their credentials to other colleges and universities.

of Human Resources" about "exiting the University and outplacement assistance." Also on August 1, 2017, President Gallot wrote the Board requesting approval of GSU's plan to "teach-out" the Economics program and to terminate the two faculty members. The Board approved the plan on August 24, 2017.

Plaintiff taught courses at GSU during the Fall of 2017 and the Spring of 2018. On April 26, 2018, plaintiff penned a response to President Gallot's August 2017 letter. In the letter, plaintiff expressed he was "starting to worry about the status of his [faculty] appointment." He also requested "approval for continuation" of his tenure "beyond May 11," noting his ability to teach courses in the computer information systems program. Plaintiff also stated he was "appealing" his termination and requested a transfer to the computer information systems department. He asserted he had seniority over Dr. Felton (who was also terminated) and Dr. Haj Mahmoud, an accounting/finance professor, and he requested reconsideration of the decision to retain Dr. Mahmoud instead of him. Subsequently, on May 9, 2018, plaintiff met with President Gallot, Dr. Smiley, and others about his termination. GSU adhered to its decision to terminate plaintiff.

On May 10, 2019, plaintiff filed a petition for damages and wrongful termination against GSU and the Board, alleging he was "wrongfully terminated in violation of the [the Board's] and [GSU's] stated policy, procedure, and law governing termination of tenured faculty." More specifically, plaintiff alleged GSU's policy regarding termination of faculty required seniority to be considered as a criterion for termination, and he had seniority over at least two other faculty members who were retained. He

3

also alleged the university's policy required at least a 12-month notice prior to the expiration of an appointment, and he was only provided with a nine-month notice.

Defendants filed a motion for summary judgment arguing GSU had no capacity to be sued as a defendant, and only the Board was a proper defendant. Defendants also argued plaintiff failed to present any evidence of negligent conduct on the part of the Board, the Board did not owe a duty to plaintiff because of the elimination of the economics program at GSU; and, in the alternative, if a duty was owed, plaintiff failed to show the Board breached any alleged duty. The district court treated the motion as "an exception of no cause of action and an exception of lack of procedural capacity." Thereafter, defendants filed a second motion for summary judgment alleging wrongful termination is a delictual action with a prescriptive period of one year, which commences to run when the plaintiff has actual or constructive notice of the alleged wrongful termination. The Board asserted in August 2017, plaintiff received notice his faculty appointment would end as of May 11, 2018, pending approval by the Board. The trial court considered the second motion for summary judgment as a peremptory exception of prescription.

Following a hearing, the district court sustained the exception of lack of procedural capacity, stating, "The parties agreed at the hearing and the statutes support that GSU has no procedural capacity to sue or be sued and agreed that [GSU] should be dismissed as a defendant in accordance with La. R.S. 17:3351." Further, the court granted the motion for summary judgment/exception of no cause of action and dismissed plaintiff's claims against the Board, stating:

4

The Court finds that Nwoha's arguments do not present any genuine issue of material fact and that GSU complied with the provisions of their handbook and/or the policies of the Board regarding termination of a tenured professor following discontinuance of a degree program; therefore, no duty was owed to Nwoha[.]

The district court also sustained the motion for summary judgment/peremptory exception of prescription, stating:

During his deposition, [plaintiff] testified that he had notice of his termination on August 1, 2017. [Plaintiff's] written acknowledgment of that notice was sent on April 26, 2018. Even if the Court deferred to the latter date, any claim [plaintiff] had against GSU prescribed before he filed his Petition for Damages and Wrongful Termination on May 10, 2019.

Plaintiff appeals.[4]

## DISCUSSION

*Motion for Summary Judgment/Exception of No Cause of Action*

Plaintiff contends the district court erred in granting defendants' motion for summary judgment by sustaining the exception of no cause of action. Plaintiff argues defendants failed to follow the rules and procedures established for termination of a tenured faculty member because GSU failed to make any effort to find another position for him and did not present the matter to the Tenured Faculty Committee to make final findings and recommendations to the President of GSU. According to plaintiff, his termination was unilateral and arbitrary because after GSU ended the Economics program, it continued to offer courses plaintiff was "qualified to teach." Yet, GSU opted to retain at least two faculty members over whom

---

[4] Plaintiff assigns as error the district court's ruling granting defendants' motions *in limine* to disallow any untimely or unidentified witnesses and exhibits and to disallow plaintiff from presenting "Golden Rule" type arguments. Due to our ruling, this argument is moot.

5

he had seniority. For example, plaintiff was hired in 2006, and Dr. Haj Mahoud and Dr. Morsheda Hassan were hired in 2009. However, Dr. Mahoud and Dr. Hassan were retained and taught basic economics after plaintiff was terminated, despite Dr. Hassan not having a degree in Economics.

The peremptory exception of no cause of action tests the legal sufficiency of the plaintiff's petition by determining whether the law affords a remedy on the facts alleged in the petition. *Scheffler v. Adams and Reese, LLP*, 06-1774 (La. 2/22/07), 950 So. 2d 641; *Gipson v. Fortune*, 45,021 (La. App. 2 Cir. 1/27/10), 30 So. 3d 1076, *writ denied*, 10-0432 (La. 4/30/10), 34 So. 3d 298; *Blanche v. Varner*, 52,659 (La. App. 2 Cir. 5/22/19), 273 So. 3d 620. A "cause of action," when used in the context of the peremptory exception of no cause of action, refers to the operative facts that give rise to the plaintiff's right to judicially assert the action against the defendant. *White v. St. Elizabeth B.C. Bd. of Directors*, 45,213 (La. App. 2 Cir. 6/2/10), 37 So. 3d 1139; *Blanche*, *supra*. The purpose of the exception of no cause of action is not to determine whether the plaintiff will prevail at trial, but is to ascertain if a cause of action exists. *Bogues v. Louisiana Energy Consultants, Inc.*, 46,434 (La. App. 2 Cir. 8/10/11), 71 So. 3d 1128; *Blanche*, *supra*. The exception is triable on the face of the petition, and for the purpose of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. *Fink v. Bryant*, 01-0987 (La. 11/28/01), 801 So. 2d 346; *Blanche*, *supra*.

The motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. La. C.C.P. art. 966 (A)(1). A genuine issue is one about

which reasonable persons could disagree. *King v. Town of Clarks*, 21-01897 (La. 2/22/22), 345 So. 3d 422. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of trial on the merits. *Id*. When the motion is made and supported as provided in Art. 966, an adverse party may not rest on the mere allegations or denials of his pleadings, but must set forth specific facts showing there is a genuine issue for trial. La. C.C.P. art. 967 (B); *Latour v. Brock*, 23-00262 (La. 6/21/23), 362 So. 3d 405. Appellate courts review motions for summary judgment de novo, using the same criteria that governed the trial court's determination of whether summary judgment is appropriate. *Farrell v. Circle K Stores Inc.*, 22-00849 (La. 3/17/23), 359 So. 3d 467; *Noland v. Lenard*, 55,342 (La. App. 2 Cir. 11/15/23), 374 So. 3d 1133, *writ denied*, 23-01670 (La. 2/14/24), 379 So. 3d 32.

La. C.C.P. art. 966(D)(1) allocates the burden of proof on summary judgment as follows:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

To avoid dismissal, the plaintiff in a negligence action must introduce (for the purpose of summary judgment) *prima facie evidence* of the element or elements of that claim challenged by the motion for summary judgment. *McGee v. Ashford Place Apartments, LLC*, 54,795 (La. App. 2 Cir. 11/16/22), 351 So. 3d 899.

7

In the instant case, it is undisputed that plaintiff was a tenured faculty member, and he was terminated due to the discontinuation of the Economics degree program.  At the time GSU discontinued its Economics degree program and plaintiff was terminated, the GSU Faculty Handbook (written in 2009 and updated Summer 2013) provided:

**Tenured Appointments**

A full-time tenured appointment gives the faculty member the right to continuous appointments until the faculty member resigns, retires, is dismissed for adequate cause, or is terminated pursuant to a reduction in force resulting from a bona fide financial exigency (a state of monetary emergency declared by the Louisiana Board of Supervisors), or from the formal discontinuance of a degree or program area.

\*\*\*

**Tenure Definition**

Indeterminate tenure, hereinafter referred to as tenure, is intended to ensure and enhance faculty members' academic freedom and job effectiveness. ***Tenure assures the faculty member that employment in the academic discipline at the institution will be renewed annually*** until the faculty member resigns, retires, or ***is terminated*** for cause or financial exigency or ***program discontinuance***.  (Emphasis added)

\*\*\*

**"Reduction in Force" Terminations**

\*\*\*

Definition of terms applicable to "Reduction in Force" are as follows:

*Reduction in force*: termination resulting from a bona fide financial exigency or the formal discontinuance of a degree or program area.

\*\*\*

*Formal discontinuance*: the elimination of a degree or program area through action initiated by the University, the Board of Supervisors, or the Board of Regents.

\*\*\*

**Notifications for "Reduction in Force"**

\*\*\*

Notice of termination for reduction in force due to formal discontinuance of degree or program areas must be given not later than ***one calendar year*** in advance of its effective date, unless otherwise directed by the Board of Regents or Board of Supervisors (Emphasis added).

In 2015, the University of Louisiana System ("UL System") issued an updated policy regarding the discontinuance of an academic program, and the policy became effective June 2015.[5] The 2015 policy provides as follows:

***

Tenured Faculty

1. ***Termination of appointments of tenured faculty may occur as the result of program discontinuance***. Unless there is a compelling reason to do otherwise, ***termination order shall be based on faculty rank and seniority***. (Emphasis added).

***

2. ***Tenured faculty whose appointments are to be terminated shall receive not less than two full academic semesters/three full quarters notice prior to termination***. Notice shall be provided no later than the first scheduled day of classes of the semester/quarter of such notice. (Emphasis added).

***

Obligations to Tenured Faculty

A. Before terminating the appointment of a faculty member with tenure because of program discontinuance, reasonable efforts will be made to find another position within the University for which the faculty member is academically qualified, where a position is available.

B. Assistance will also be provided by the System Office for possible relocation to another campus within the System or to another institution within the State. Inter-campus transfers will be made if mutually acceptable.

***

Although plaintiff now argues defendants were negligent in failing to provide him with a *one-year* notice of his pending termination, the updated UL System policy required GSU to provide plaintiff with "not less than *two full academic semesters*/three full quarters notice prior to termination." Prior to the beginning of the Fall 2017 semester, by letter dated August 1,

---

[5] Based on this record, it is unclear whether GSU updated its Faculty Handbook to conform with the 2015 UL System policy.

2017, GSU's president notified plaintiff of his pending termination. Plaintiff was further notified the termination would be effective May 18, 2018, after the end of the Spring 2018 semester. Therefore, the evidence established GSU followed the UL System's policy and provided plaintiff with "not less than two full academic semesters' notice prior to his termination."

Furthermore, plaintiff did not present any evidence to support his arguments that GSU violated its policies by failing to assist him in securing another position and failing to present his proposed termination to the Tenured Faculty Committee. In his opposition to the motion for summary judgment, plaintiff attached the August 1, 2017, letter from President Gallot, which informed plaintiff that GSU would "seek support from the Louisiana Workforce Commission Rapid Response Team to assist [him] with the identification of potential outplacement opportunities" and would distribute plaintiff's credentials "to campuses within the University of Louisiana System and other public universities within the state *at your request*." (Emphasis added).

Plaintiff did not present any evidence to indicate he requested assistance from GSU in identifying potential opportunities to secure another position elsewhere. Similarly, plaintiff did not present any evidence that GSU did not present the matter to a faculty committee. Rather, plaintiff attached the seven-page letter he sent to President Gallot, in which he expressed his disagreement with the decision to terminate his employment. He also presented a memorandum, which indicated that on May 9, 2018, he met with President Gallot, Dr. Smiley, someone named Dr. Donald White, and other "required attendees." It is unclear whether the "required attendees" were members of the faculty committee.

Additionally, we find no merit to plaintiff's argument regarding who he believed should have been terminated instead of him. The policy provided, "[T]ermination order shall be based on faculty rank and seniority" "unless there is a compelling reason to do otherwise." Defendants introduced into evidence the memorandum and affidavit of Dr. Smiley, who stated the two faculty members within the Economics department, one of whom was plaintiff, had the least seniority and were recommended for termination. Moreover, plaintiff submitted proof that GSU merged the Accounting, Economics, and Computer Information Systems programs into one department, and he maintains he was qualified to teach courses in other disciplines (computer information systems), and he had done so in the past. The evidence shows plaintiff was tenured in Economics, and he admitted in his deposition that he did not gain certification in Computer Information Systems until after he received the notice of termination. There is nothing in this record, in either the GSU Faculty Handbook or the UL System's policies, to establish GSU was required to retain plaintiff's employment by transferring him to a related, but wholly different, discipline than the one in which he was tenured to teach. Further, Dr. Smiley stated in the memo, "A review of [the terminated parties'] credentials revealed that no other faculty positions within the University for which these two faculty members are academically qualified are available." Plaintiff produced arguments, but no evidence, to prove otherwise.

Based on our de novo review of the record, we find plaintiff failed to present any evidence to establish defendants did not follow procedures established for termination of a tenured faculty member. Consequently, we

11

find the district court did not err in granting the motion for summary judgment and sustaining the exception of no cause of action.[6]

*Motion for Summary Judgment/Exception of Prescription*

Plaintiff also contends the district court erred in granting the motion for summary judgment and sustaining the peremptory exception of prescription. He argues his claims arise in contract and tort, and the contract claims are subject to a 10-year prescriptive period. Plaintiff also asserts on August 1, 2017, he was informed his position "will end May 11, 2018, pending approval by the Board of Supervisors"; therefore, plaintiff argues his injuries/damages were not sustained until May 11, 2018, the effective date of his termination. In the alternative, plaintiff argues he did not have actual or constructive knowledge of his termination until May 15, 2018, the date he was "locked out of his office" and informed the recommendation for his termination had been approved by the Board.

Generally, the burden of proving that a suit has prescribed rests with the party pleading prescription. *Jones v. Prator*, 55,628 (La. App. 2 Cir. 5/22/24), 386 So. 3d 1271, *writ not cons.*, 24-00818 (La. 10/15/24), 394 So. 3d 823; *Holmes v. Lee*, 35,021 (La. App. 2 Cir. 9/28/01), 795 So. 2d 1232. However, when the plaintiff's petition shows on its face that the prescriptive period has run, and the plaintiff relies upon a suspension or interruption of prescription, the burden is on the plaintiff to prove the suspension or interruption. *Id.*

---

[6] Further, plaintiff argues the district court erred in considering La. R.S. 9:2798.1, and finding the Board had qualified immunity. Due to our conclusion that the trial court did not err in granting summary judgment and sustaining the exception of no cause of action, this argument is moot.

Regarding plaintiff's claim of breach of contract, we note plaintiff failed to raise this argument in either his petition for damages or in an argument to the district court. Generally, an argument raised for the first time on appeal will not be considered. *Segura v. Frank*, 93-1271 (La. 1/14/94), 630 So. 2d 714; *Burch v. Burch*, 51,780 (La. App. 2 Cir. 1/10/18), 245 So. 3d 1138. Therefore, plaintiff's contract argument will not be addressed.

Generally, a claim for wrongful discharge or termination is a delictual action subject to a one-year prescriptive period provided in La. C.C. art. 3492.[7] This prescriptive period commences when the plaintiff has actual or constructive notice of the alleged wrongful termination. *Clark v. Wilcox*, 04-2254 (La. App. 1 Cir. 12/22/05), 928 So. 2d 104, *writ denied*, 06-0185 (La. 6/2/06), 929 So. 2d 1252; *Nicholson v. St. John the Baptist Par. Sch. Bd.*, 97-846 (La. App. 5 Cir. 1/14/98), 707 So. 2d 94, *writ not cons.*, 98-0411 (La. 3/27/98), 716 So. 2d 879.

In the instant matter, it is undisputed that on August 1, 2017, plaintiff received notice of his termination "pending the approval of the Board of Supervisors." He was also informed his termination would be effective May 11, 2018. There is no evidence of record that plaintiff received notice of the Board's approval of his termination. Likewise, there is no evidence to support plaintiff's claim that he did not realize he was being terminated until May 15, 2018. However, the record reveals that plaintiff wrote a letter to President Gallot, dated April 26, 2018. In the letter, plaintiff stated:

---

[7] At the time this lawsuit was filed, La. C.C. art. 3492 provided that delictual actions were subject to a liberative prescriptive period of one year. In 2024, the article was repealed. Effective July 1, 2024, delictual actions are subject to a liberative prescriptive period of two years, which commences to run for the day the injury or damage is sustained.

13

This letter is in response to yours dated August 1, 2017 ***terminating my appointment*** at Grambling State University (GSU). I am appealing ***the termination*** on several grounds and at the same time asking to be moved to the Computer Information (CIS) program.

***My termination*** as a tenured faculty was supposedly based on the closure of the economics program. *** ***My termination*** was executed without regard to the provisions of the GSU Faculty Handbook[.]

***

(Emphasis added).

Based on this record, it is clear plaintiff received notice of his pending termination on August 1, 2017, and he had actual and constructive notice of his termination at least by April 26, 2018. Yet, the lawsuit was not filed until May 10, 2019, more than one year after plaintiff acquired actual notice of his termination. Accordingly, we find the district court did not err in sustaining the motion for summary judgment/peremptory exception of prescription in favor of defendants.

## CONCLUSION

For the reasons set forth herein, the district court's judgment, granting the motions for summary judgment and sustaining the peremptory exceptions of no cause of action and prescription, is hereby affirmed. Costs of this appeal are assessed to plaintiff/appellant, Ogbonnaya John Nwoha.

**AFFIRMED.**

14