STEWART, J.
| plaintiffs, John C. McCarthy, individually and as trustee of the Kathleen McCarthy Balden Trust, and Majorie M. Moss, filed suit against defendants, Evolution Petroleum Corporation (“Evolution”), formerly known as Natural Gas Systems, Inc., and NGS Sub. Corp. (“NGS”), for rescission of the sale of their royalty rights in the Delhi Field Unit in the Holt Bryant Reservoir, damages, and attorney fees. Plaintiffs asserted fraud and error as to cause as the grounds for rescission. The defendants filed the peremptory exception of no cause of action, which the trial court granted. The plaintiffs now appeal the dismissal of their action.
As did the trial court, we find that the petition fails to state a cause of action. However, because this suit is between parties to a longstanding mineral lease and for reasons explained this opinion, we find that plaintiffs should be afforded the opportunity to amend their petition to state a cause of action, if any, under La. R.S. 31:122.
FACTS
According to the petition filed on July 27, 2011, the plaintiffs are the successors-in-interest to mineral leases on lands in Richland Parish. The leases were executed more than 60 years ago and have been held active by production in paying quantities since execution. Plaintiffs and their predecessors received from the lessees regular royalty payments along with reports on production and sales. The lessees’ rights were assigned to various operators over the years. The petition indicates that the defendants purchased the rights in the Delhi Field Unit in September 2003 for $2.8 million dollars.
| .According to the petition, production had declined by September 2003 to approximately 18 barrels of oil a day, but the defendants increased production over the next two years to 145 barrels of oil per day. The petition alleges that in 2004 the defendants began seeking a purchaser for the Delhi Field Unit for the purpose of using “C02 enhanced oil recovery technology” to produce the recoverable reserves. The defendants’ efforts resulted in a deal with Denbury Resources, LLC (“Den-bury”), for a purchase price of $50 million dollars.
Attached to the petition is a press release by NGS, now Evolution, dated May 9, 2006, stating that NGS would retain a 4.8 percent royalty interest in the Delhi Field Unit and that upon generation of $200 million of net cash flows, it would regain a 25 percent working interest. According to the press release, Denbury estimated that its capital expenditures would be in the area of $200 million with potential reserves of 30 million to 40 million barrels, net to its interests. NGS estimated its potential recovery would be in the range of 9 million to 14 million barrels with no capital costs incurred.
*450 In short, the plaintiffs’ petition alleges that the defendants made unsolicited written offers to purchase their royalty rights without disclosing the deal with Denbury for the sale of the Delhi Field Unit or their knowledge about the recoverable reserves. The petition states that the offer letter warned that the “funding source for this purchase is of a limited time and any transaction must be closed in May 2006.” Plaintiffs allege this statement was untrue, because the defendants were going to receive $50 | ^million from Denbury and they made similar offers to others after May 2006. The petition alleges that while the offer letter referred to “Delhi Field Royalty Owners,” only select individuals, such as the “vulnerable elderly” like Moss and those “unsophisticated in oil and gas matters” like the McCarthy plaintiffs, were targeted with purchase offers.
The petition alleges that the defendants offered the plaintiffs 16 years’ worth of previous royalties for their rights. Plaintiffs accepted. The McCarthy royalty owners received $15,957 each, and Moss received $9,859. According to the petition, plaintiffs received only 43 cents for each barrel of recoverable reserves.
The plaintiffs allege in their petition that a relation of confidence developed over the 60 years of lessor/lessee relations between the parties and their predecessors-in-interest. Because of this relation of confidence, they relied on the defendants’ fraudulent statements and omissions in accepting the offer to sell their royalty rights.
After the trial court overruled dilatory exceptions raised by the defendants, they raised the peremptory exception of no cause of action. Defendants argued that the petition fails as a matter of law to state a cause of action for rescission based on fraud. They argued there was no relation of confidence or fiduciary duty between the parties and no duty on their part to disclose the Denbury agreement or any special knowledge about the value of the mineral rights. Defendants also argued that the plaintiffs’ claims were really disguised claims of lesion beyond moiety, a remedy that is unavailable under the Mineral Code.
|4The plaintiffs countered that the facts alleged, which must be accepted as true, state causes of action based on fraud, error as to cause, and breach of contract. As to fraud, plaintiffs argued that the defendants misrepresented the closing period for the sale, failed to disclose the Denbury deal, and failed to disclose the certainty of recoverable reserves of 35 to 40 million barrels of oil by use of the “C02 enhanced oil recovery technology.” Plaintiffs argued that the defendants’ fraudulent actions and the relationship of confidence prevented them from learning the true facts about the value of their royalty interests. Recognizing that there is no fiduciary duty between mineral lessees and lessors, plaintiffs argued that a relation of confidence is something apart from a fiduciary relationship.
Asserting that the sale should be rescinded because of error as to cause, plaintiffs argued that they were in error as to the quantity of recoverable reserves and the existence of the Denbury deal. They argued that the defendants actively cultivated these errors and that they would not have consented had they known the true facts.
Lastly, plaintiffs argued that the facts alleged in their petition state a claim for breach of contract. They asserted that the defendants stopped making royalty payments due under the original lease agreements.
The exception was submitted on the record and taken under advisement. The trial court granted the exception of no cause *451 of action and rendered judgment dismissing with prejudice the plaintiffs’ claims. In its ruling, the trial court found no support for the alleged relation of confidence between the parties and concluded that the defendants had no duty to Rdisclose the Denbury deal. The trial court found that the plaintiffs were really asserting a claim of lesion beyond moiety, which is prohibited under the Mineral Code.
On appeal, the plaintiffs raise the same arguments summarized above in opposition to the defendants’ exception.
DISCUSSION
An exception of no cause of action tests the legal sufficiency of the petition by questioning whether the law affords a remedy based on the facts alleged in the petition. Bogues v. Louisiana Energy Consultants, LLC, 46,434 (La.App.2d Cir.8/10/11), 71 So.3d 1128. In the context of the exception, the “cause of action” refers to the operative facts that give rise to the plaintiffs right to assert the action against the defendant. Id.
No evidence may be introduced on the trial of an exception of no cause of action. La. C.C.P. art. 929. The exception is triable on the face of the petition, with the well-pleaded facts accepted as true for the purpose of determining the issues raised by the exception. Bogues, supra; Badeaux v. Southwest Computer Bureau, Inc., 2005-0612 (La.3/17/06), 929 So.2d 1211. The court may consider exhibits attached to the petition in determining whether the law extends a remedy under the facts alleged. Bogues, supra; Creamer Brothers, Inc. v. Hicks, 39,799 (La.App.2d Cir.6/29/05), 907 So.2d 880.
The exception should be granted only when, in viewing the petition in the light most favorable to the plaintiff and resolving every doubt in the plaintiffs favor, it appears that the plaintiff can prove no set of facts in | (¡support of any claim that would entitle him to relief. Bogues, supra. The mover bears the burden of proving that the petition fails to state a cause of action. Id. Because whether a petition states a cause of action is a question of law, a judgment sustaining an exception of no cause of action is subject to a de novo review on appeal. Id.
We will examine whether the petition states a cause of action for either fraud, error as to cause, or breach of contract as asserted by the plaintiffs.

Breach of Contract

We easily find that plaintiffs petition fails to state a cause of action for breach of contract based on the allegation that the defendants stopped making royalty payments upon plaintiffs’ acceptance of the defendants’ offer to purchase their royalty interests. The petition does not allege that the defendants refused to pay royalties due prior to agreement on the sale. It merely relates that defendants treated the sale as completed and awaiting funding. Ownership transfers as soon as there is agreement on the thing sold and the price is fixed, even though there is not yet delivery of the thing or payment of the price. La. C.C. art. 2456. Accordingly, the facts alleged do not state a cause of action for breach of contract due to the defendants’ failure to make royalty payments after the sale of the royalty rights.

Fraud and Error as to Cause

Consent to a contract may be vitiated by error, fraud, or duress. La. C.C. art.1948. Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause 17was known to the other party. La. C.C. art.1949. Cause is the reason why a party obligates himself. La. C.C. art.1967.
*452 A misrepresentation or suppression of the truth made with the intention of obtaining an unjust advantage for one party or causing a loss or inconvenience to the other party is fraud. La. C.C. art.1953. Fraud may result from silence or inaction. Id. The elements of a fraud claim are (1) a misrepresentation, suppression, or omission of true information, (2) the intent to obtain some unjust advantage or to cause some damage or inconvenience to another, and (3) the error induced by the fraudulent act must relate to a circumstance substantially influencing the victim’s consent. Shelton v. Standard/700 Associates, 2001-0587 (La.10/16/01), 798 So.2d 60; Skannal v. Bamburg, 44,820 (La.App.2d Cir.1/27/10), 33 So.3d 227, writ denied, 2010-0707 (La.5/28/10), 36 So.3d 254.
When the party against whom the fraud was perpetrated could have ascertained the truth without difficulty, inconvenience, or special skill, fraud does not vitiate consent. La. C.C. art.1954. However, this exception does not apply when a relation of confidence has reasonably induced a party to rely on the other’s assertions or representations. Id. When fraud is based on silence or suppression of the truth, the plaintiff must prove a duty to speak or disclose the information. Skannal, supra, citing Greene v. Gulf Coast Bank, 593 So.2d 630 (La.1992).
The petition alleges both a misrepresentation and a suppression of the truth. Plaintiffs allege that defendants misrepresented that the sale had to close in May 2006 due to fund limitations. The petition speculates that this | ^statement must have been untrue because defendants would be receiving $50 million from the Denbury deal and because they allegedly continued to make similar offers to other royalty owners. Plaintiffs assert that the defendants made this misrepresentation to pressure them into accepting the offer.
Even if the defendants misrepresented the need to close in May 2006, the error induced by the fraudulent act must relate to a circumstance substantially influencing the victim’s consent. Shelton, supra; Skannal, supra. The basic error that underlies the plaintiffs’ complaint is that their royalty rights were worth more than what defendants offered and paid. No facts alleged indicate that the defendants’ purported need to close in May 2006 substantially influenced the plaintiffs’ consent to sell their royalty rights. Plaintiffs do not allege that they wanted more time to consider the offer but were persuaded from doing so by the May 2006 closing deadline stated in the offer letter. Viewing the allegations of operative fact in the light most favorable to the plaintiffs, the alleged misrepresentation does not state a cause of action for fraud.
The plaintiffs allege that the defendants did not disclose the Denbury deal or the value of the recoverable reserves. Thus, they allege fraud by silence or suppression of the truth. Implicit in this allegation is that the defendants misrepresented the value of the plaintiffs’ royalty rights in their purchase offer. Plaintiffs argue and allege that they were induced to rely on the defendants’ representations because of a relation of confidence. They assert that the relation of confidence arose from the 60 years of production 19in the Delhi Field Unit and the lessor/lessee relationship by which the plaintiffs and their predecessors received from defendants and their predecessors regular royalty payments and production reports that the plaintiffs reasonably relied on regarding their mineral interests.
Plaintiffs recognize that a mineral lessee is not under a fiduciary obligation to his lessor. La. R.S. 31:122. But they argue that a relation of confidence is a *453 broader concept than a fiduciary obligation, and they refer to Skannal, supra, in support of their argument that a relation of confidence existed between the parties. We need not attempt to determine whether a fiduciary obligation differs from a relation of confidence. We find that the facts do not, as a matter of law, allege a relation of confidence that would reasonably induce a party to rely on the others’ assertions or representations.
This court found a relation of confidence where a young woman with limited education and ability to understand financial transactions relied on her relatives to advise her. See Hickman v. Bates, 39, 178 (La.App.2d Cir.12/15/04), 889 So.2d 1249. In Skannal, supra, this court found a relation of confidence and duty of full disclosure between longstanding business partners who had worked together over 25 years in various business ventures. Both cases involved some element of a personal relationship between the parties that would engender trust. Here, there is no such relationship alleged, only the regular receipt of royalty payments and reports.
Plaintiffs argue that, like in Skannal, supra, their course of dealings with the defendants over 60 years gave rise to a relationship of confidence |10that required the defendants to fully disclose the Den-bury deal and their knowledge about the recoverable reserves. The relationship between the parties in Skannal, supra, is not analogous to the lessor/lessee relationship alleged in this matter. The parties in Skannal worked closely together for years in various business ventures. Here, the factual allegations are that the parties’ predecessors entered mineral leases 60 years ago, the various lessees over the years paid royalties to the plaintiffs and their predecessors-in-interest and provided production and revenue reports. There was no personal working relationship as in Skannal, supra, between the same parties. There is no allegation that the plaintiffs sought advice or additional information about their mineral rights from the defendants or their predecessors over the years and relied on such advice in making decisions. Rather, the facts alleged merely reflect the fulfillment of contractual obligations between the parties and their predecessors over the years, not a relation of confidence as intended under La. C.C. art. 1954.
The absence of a relation of confidence which would reasonably induce the party to rely on the other’s assertions or representations does not foreclose the possibility of a duty to disclose in this matter. We recognize that similar claims based on fraud and error as to cause have been asserted unsuccessfully by parties who entered mineral leases prior to the Haynesville Shale becoming public knowledge. In Cascio v. Twin Cities Development, LLC, 45,634 (La.App.2d Cir.9/22/10), 48 So.3d 341, the plaintiffs sued to rescind a mineral lease based on error as to cause because the defendant knew, but did not disclose, that the property overlay the InHaynesville Shale. The court concluded that the claim was one of error as to the value of the mineral lease and, therefore, was synonymous with a claim of lesion beyond moiety. La. R.S. 31:17 states that a sale of a mineral right may not be rescinded for lesion beyond moiety.
The Cascio opinion followed and relied on a federal court decision, Thomas v. Pride Oil & Gas Properties, Inc., 633 F.Supp.2d 238 (W.D.La.2009), wherein a petition alleging error as to cause and fraud due to the failure of the mineral lessor to disclose the existence and value of the Haynesville Shale was dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), which is akin to the exception of no cause of action. In dismissing *454 the fraud claim, the court found that the lease resulted from a “common, arms-length negotiation” between the parties and that the defendant did not have a duty to disclose any information about the possible value of the Haynesville Shale. Id., at 242. Noting the speculative nature of mineral exploration and production, the court refused to hold that error as to the existence of mineral deposits is an error as to cause. The court concluded that such a claim is “tantamount to a suit for lesion beyond moiety.” Id., at 244.
Cascio, supra, and Thomas, supra, appear facially on point. However both cases involved initial lease purchase disputes between parties with no prior contractual relationship, whereas here a longstanding lessee purchased the royalty rights of its lessors. This is a significant distinction that may lead to a different result in this matter in light of the duties set forth in La. R.S. 31:122.
112La. R.S. 31:122 requires a mineral lessee “to perform the contract in good faith and to develop and operate the property leased as a reasonably prudent operator for the mutual benefit of himself and his lessor.” The main consideration of a mineral lease is the development of the leased premises for minerals. Carter v. Arkansas Louisiana Gas Co., 213 La. 1028, 36 So.2d 26 (1948); Ferrara v. Questar Exploration and Production Co., 46,-357 (La.App.2d Cir.6/29/11), 70 So.3d 974, writ denied, 2011-1926 (La.l 1/14/11), 75 So.3d 943; Vetter v. Morrow, 361 So.2d 898 (La.App. 2d Cir.1978). Moreover, a lessee owes a duty of further exploration after obtaining production in paying quantities. Carter, supra; Ferrara, supra.
Though a novel approach, it is conceivable that the lessee’s duty to act as a reasonably prudent operator for the parties’ mutual benefit might require disclosure of the Denbury deal and the plan to recover millions of barrels of oil by utilizing “C02 enhanced oil recovery technology.” The facts alleged suggest that the recovery of substantial reserves by use of the “C02 enhanced oil recovery technology” was more than speculative. Though defendants are alleged to have had this knowledge, as demonstrated by the press release, they sought to purchase the plaintiffs’ royalty rights by offering “an amount of trailing royalties” that a purchaser unaware of the oil recovery project with Denbury would not turn down.
When a petition fails to state a cause of action, but may be amended to cure the defect, the court shall grant the plaintiff leave to amend. La. C.C.P. art. 934; Badeaux, supra. Considering the facts pled in light of the duty of a mineral lessee to perform in good faith and to operate and develop | isthe leased property for his and the lessor’s mutual benefit, we find that the petition may be amended to state a cause of action utilizing the duties set forth in La. R.S. 31:122.
CONCLUSION
For the reasons stated above, we affirm the trial court’s judgment sustaining the exception of no cause of action. However, we amend to vacate that part of the judgment dismissing the plaintiffs’ claim and remand to allow the plaintiffs the opportunity to amend their petition to state a cause of action, if any, based on the duties set forth in La. R.S. 31:122. Any amended petition must be filed in the Fifth Judicial District Court within 15 days of the finality of this opinion. Plaintiffs shall bear the costs of appeal.
AFFIRMED IN PART, AMENDED IN PART, and REMANDED.
CARAWAY, J., concurs with written reasons.
SEXTON, J. Pro Tem., concurs in the remand.