# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                           NEWS RELEASE #050

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **14th day of October, 2015**, are as follows:

**BY WEIMER, J.**:

2014-C -2607       JOHN C. MCCARTHY, INDIVIDUALLY AND AS TRUSTEE OF THE KATHLEEN
                   MCCARTHY BALDEN TRUST, AND MAJORIE M. MOSS v. EVOLUTION PETROLEUM
                   CORPORATION, FORMERLY KNOWN AS NATURAL GAS SYSTEMS, INC., AND NGS
                   SUB CORPORATION (Parish of Richland)

                   For the foregoing reasons, the judgment of the appellate court is
                   reversed and the ruling of the district court granting the
                   defendants' exception of no cause of action and dismissing the
                   case with prejudice is reinstated.
                   REVERSED.

                   JOHNSON, C.J., dissents and assigns reasons.
                   CRICHTON, J., additionally concurs and assigns reasons.

# SUPREME COURT OF LOUISIANA

## NO. 2014-C-2607

## JOHN C. MCCARTHY, INDIVIDUALLY AND AS TRUSTEE OF THE KATHLEEN MCCARTHY BALDEN TRUST, AND MAJORIE M. MOSS

## VERSUS

## EVOLUTION PETROLEUM CORPORATION, FORMERLY KNOW AS NATURAL GAS SYSTEMS, INC., AND NGS SUB CORPORATION

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, SECOND CIRCUIT, PARISH OF RICHLAND*

**WEIMER**, Justice

We granted certiorari to determine whether the appellate court's recognition of a "novel and untested" cause of action comports with Louisiana mineral law. The purported cause of action imposes a duty on a mineral lessee purchasing the lessor's mineral royalty rights to disclose to the lessor that the lessee has already negotiated the resale of the mineral rights to a third party for a significantly higher price. Finding the lessee's duties upon which the appellate court premised its cause of action to be expressly excluded in the Mineral Code, we reverse the appellate court's decision, and reinstate the district court's decision, which ruled plaintiffs failed to state a cause of action and dismissed this case with prejudice.

## FACTS AND PROCEDURAL HISTORY

This case arises from a petition filed by vendors of mineral rights, plaintiff John C. McCarthy, individually and as trustee of the Kathleen Balden Trust, and plaintiff Marjorie M. Moss. Plaintiffs named as a defendant Evolution Petroleum Corporation ("Evolution"), which was formerly known as Natural Gas Systems, Inc. Plaintiffs also named as a defendant NGS Sub. Corp. ("NGS"). Plaintiffs sought damages and rescission of their sale of royalty interests in mineral leases within the Delhi Field Unit, located in Richland Parish. Plaintiffs alleged fraud and error as grounds for rescission.

The defendants filed a peremptory exception of no cause of action, which the district court granted, and the case was dismissed. In the first of two appeals in this case, the appellate court affirmed the exception of no cause of action, but reversed the dismissal with instructions to the district court on remand to allow the plaintiffs the opportunity to amend their petition to state a cause of action. **McCarthy v. Evolution Petroleum Corp.**, 47,907 (La.App. 2 Cir.02/27/13), 111 So.3d 446, writ denied, 13-1022 (La. 6/28/13), 118 So.3d 1097 ("McCarthy I").

As explained in **McCarthy I**, plaintiffs are the successors-in-interest to mineral rights. The mineral rights were leased more than 60 years ago and, since that time, the leases have been held active by production in paying quantities. The lessors retained a mineral interest of 1/8 for royalty payments. The operation rights as mineral lessees have passed to various operators through the years.

In 2004, NGS corporate entities held the operation rights as mineral lessees. In short order, NGS entities consolidated their corporate status within the Evolution corporate entity. Plaintiffs allege that Evolution, through its NGS corporate ancestors, sought a purchaser for the Delhi Field Unit leases. Based on information

about the Delhi Field Unit gleaned during operations, Evolution specifically sought a lease purchaser interested in employing "CO2 enhanced oil recovery technology" which would dramatically increase mineral production.

Evolution reached a purchase agreement with Denbury Resources, LLC ("Denbury"), for a cash price of $50 million plus other compensation. Although oil production had declined by 2004 to 145 barrels per day, Denbury estimated its enhanced recovery techniques could tap anywhere from 30 to 40 million barrels.

Without disclosing the pending deal with Denbury or the potential for drastically increased production from CO2 recovery techniques, Evolution made unsolicited offers to purchase plaintiffs' royalty interests. Plaintiffs contend that Evolution actually targeted "vulnerable elderly" and other royalty owners who were "unsophisticated in oil and gas matters," like the plaintiffs.

Evolution offered the plaintiffs 16 years' worth of previous royalties for plaintiffs' rights. The plaintiffs accepted. For the McCarthy owners, this amounted to $15,957 each; for Ms. Moss, this amounted to $9,859.

Plaintiffs allege that a "relation of confidence" developed between themselves and the lease operators over the 60 years of mineral production. Because of this relation of confidence, the plaintiffs relied on the defendants' statements and omissions, which in light of the pending Denbury deal, amounted to fraud. In addition to fraud, plaintiffs allege causes of action for error as to cause and breach of contract.

The defendants filed an exception of no cause of action. The district court granted the exception and dismissed plaintiffs' petition. Plaintiffs appealed.

The appellate court agreed that plaintiffs' petition failed to state a cause of action. Although no clear consensus on reasoning emerged among the three-judge

panel, all agreed the plaintiffs should be allowed the opportunity to amend the petition to attempt to state a cause of action. Judge Stewart explained:

> Though a novel approach, it is conceivable that the lessee's duty to act as a reasonably prudent operator for the parties' mutual benefit might require disclosure of the Denbury deal and the plan to recover millions of barrels of oil by utilizing "CO2 enhanced oil recovery technology." The facts alleged suggest that the recovery of substantial reserves by use of the "CO2 enhanced oil recovery technology" was more than speculative. Though defendants are alleged to have had this knowledge, as demonstrated by the press release, they sought to purchase the plaintiffs' royalty rights by offering "an amount of trailing royalties" that a purchaser unaware of the oil recovery project with Denbury would not turn down.

**McCarthy I**, 47,907 at 12, 111 So.3d at 454.

Concurring, Judge Caraway opined that "[t]his ruling, finding error in the trial court's absolute dismissal of plaintiffs' claims, suggests that a cause of action for fraud may be present." **McCarthy I**, 47,907 at 1, 111 So.3d 455, Caraway, J. concurring. Judge Caraway emphasized that "[t]he plaintiffs … allege that they were paid $25,816 for the sale when the operator knew their royalty interest might be expected to receive over $9 million from the known recoverable reserves." **McCarthy I**, 47,907 at 2, 111 So.3d 455, Caraway, J. concurring.[1]

Defendants applied for rehearing, which the appellate court denied. **McCarthy I**, on reh'g, 47,907 (La.App. 2 Cir.11/12/14), 111 So.3d 456. Defendants applied to this court for supervisory review, which this court denied. **McCarthy I**, 13-1022 (La. 6/28/13), 118 So.3d 1097.

The plaintiffs filed a Supplemental and Amended Petition that reiterates much of plaintiffs' factual allegations in their original petition. Plaintiffs alleged in the Supplemental and Amended Petition that the defendants knew the price offered for

---

[1] The third member of the panel, Judge pro tempore Sexton, agreed with the remand order, but otherwise ascribed to neither Judge Stewart's nor Judge Caraway's opinion. **McCarthy I**, 47,907 at 1, 111 So.3d at 150.

plaintiffs' mineral interests was substantially below true value. Plaintiffs elaborated on the defendants' use of the reservoir data and contended defendants ceased to act as good faith operators for the mutual benefit of the parties, in violation of Mineral Code art. 122.

Again, the defendants filed an exception of no cause of action. Again, the trial court granted the exception and dismissed the Supplemental and Amended Petition with prejudice.

The plaintiffs lodged their second appeal. This time, the appellate court ruled the plaintiffs stated a cause of action for fraud. **McCarthy v. Evolution Petroleum Corp.**, 49,301 (La.App. 2 Cir. 10/15/14), 151 So.3d 148 ("**McCarthy II**"). The court reasoned:

> Evolution is alleged to have made a false assertion regarding the value of the 1/8th lease royalty, while plaintiffs with "ordinary attention" could not have detected the falsehood. The odd number allegedly selected by Evolution for the total price paid to the three plaintiffs, $41,773, was the exact total of the royalties received by plaintiffs for the past production. This emphasis on the past production accounts for no value attributable to the great production potential recognized in the Denbury deal. This allegedly gave plaintiffs an erroneous view of the value of their royalty rights vitiating their consent to the sale.

**McCarthy II**, 49,301 at 14, 151 So.3d at 156.

In addition to fraud by false assertion, the court found plaintiffs had stated a cause of action of fraud by silence. This cause of action, according to the appellate court, derived from Evolution's status as operator; specifically, "[t]he duty of the reasonably prudent operator entails certain demands upon the lessee for the use of its geological and technical understanding of the leased premises for the continuing exercise of its lease rights 'for the mutual advantage and profit of both parties' to the lease. Official Comment, La. R.S. 31:122." **McCarthy II**, 49,301 at 17, 151 So.3d at 158. One view of the plaintiffs' allegations was that "the proposed Denbury

5

project indicates that Evolution was arguably in passive breach of that performance obligation." *Id.*, 49,301 at 19, 151 So.3d at 159. The court further explained:

> [W]e find that the implications of the Denbury project in the light most favorable to plaintiffs' allegations raise the possibility of fraud by silence in this case. From the allegations, because Evolution may have been under the duty and obligation to commence a long-planned project for development as a reasonably prudent operator and in breach thereof, it could then be obligated to inform its lessors and not remain silent on its plans to fulfill its obligation as a reasonably prudent operator.

*Id.*

The appellate court recognized that "[t]he law is clear that Evolution is neither a fiduciary nor a trustee." *Id.*, 49,301 at 16, 151 So.3d at 158. Relying on **Emerson v. Shirley**, 175 So. 909 (La. 1937) (recognizing a potential cause of action for an undervalued purchase of mineral royalty interests when the parties to the agreement had a 10-year history of business dealings), the appellate court ruled: "If the nature of the relationship rises to a certain level, the **Emerson** ruling recognized a duty to speak to prevent fraud. The court found that such measure of the relationship cannot be made through a peremptory exception." *Id.*, 49,301 at 20, 151 So.3d at 159.

The appellate court then overruled the district court's exception of no cause of action, concluding:

> Because of Evolution's duty under [Mineral] Code Article 122 and its alleged commitment for further development of the plaintiffs' lease at the time of the disputed royalty sale, the plaintiffs are not precluded from asserting a claim of fraud by silence. This is a novel and untested cause of action by a mineral lessor that has never been specifically addressed and decided in our law. Moreover, Evolution was not completely silent because of the communications it had with plaintiffs, which are alleged to be misleading. Accordingly, peremptory dismissal of this case for no cause of action is unwarranted, and the trial court's ruling is reversed.

**McCarthy II**, 49,301 at 20-21, 151 So.3d 159-160.

The defendants sought this court's review, which we granted. **McCarthy v. Evolution Petroleum Corp.**, 14-2607 (La. 3/27/15), 161 So.3d 646.

## LAW AND ANALYSIS

The issue presented in this case is whether plaintiffs' Supplemental and Amended Petition ("the petition"[2]) states a cause of action in connection with the defendants' purchase of plaintiffs' mineral royalty interests.

The standards for determining whether the law allows a particular cause of action are well-established:

> As used in the context of the peremptory exception, a "cause of action" refers to the operative facts which give rise to the plaintiff's right to judicially assert the action against the defendant. **Ramey v. DeCaire**, 03-1299, p. 7 (La.3/19/04), 869 So.2d 114, 118; **Everything on Wheels Subaru, Inc. v. Subaru South, Inc.**, 616 So.2d 1234, 1238 (La. 1993). The purpose of the peremptory exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. **Ramey**, at 7, 869 So.2d at 118; **Everything on Wheels Subaru, Inc.**, 616 So.2d at 1235. No evidence may be introduced to support or controvert the exception of no cause of action. LSA-C.C.P. art. 931. The exception is triable on the face of the pleadings, and, for purposes of resolving the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. **Fink v. Bryant**, 01-0987, p. 4 (La.11/28/01), 801 So.2d 346, 349; **City of New Orleans v. Board of Commissioners of Orleans Levee District**, 93-0690, p. 28 (La.7/5/94), 640 So.2d 237, 253. The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. **Ramey**, at 7, 869 So.2d at 118.
>
> Louisiana retains a system of fact pleading, and mere conclusions of the plaintiff unsupported by facts will not set forth a cause or right of action. **Montalvo v. Sondes**, 93-2813, p. 6 (La.5/23/94), 637 So.2d 127, 131.

**Scheffler v. Adams and Reese, LLP**, 06-1774, pp. 4-5 (La. 2/22/07), 950 So.2d 641, 646.

---

[2] The parties disagree as to whether plaintiffs' original Petition should be considered when analyzing whether plaintiffs have stated a cause of action. The significance of this disagreement will be addressed later in this opinion. However, to simplify the terminology in the analysis, "the petition," without further qualifier, refers to plaintiffs' Supplemental and Amended Petition.

7

Other principles of review are also well-established, but given the different conclusions regarding the existence of a cause of action reached by the courts below, the following principles merit emphasis. The party disputing the existence of a cause of action bears the burden of demonstrating that a petition fails to state a cause of action. **Scheffler**, 06-1774 at 5, 950 So.2d at 647, *citing* **Ramey**, 03-1299 at 7, 869 So.2d at 119; **City of New Orleans**, 93-0690 at 28, 640 So.2d at 253. Regardless of whether a district court concludes a cause of action exists, "[b]ecause the exception of no cause of action raises a question of law and the district court's decision is based solely on the sufficiency of the petition, review of the district court's ruling on an exception of no cause of action is de novo." **Scheffler**, 06-1774, p. 5, 950 So.2d at 647, *citing* **Fink**, 01-0987 at 4, 801 So.2d at 349; **City of New Orleans**, 93-0690 at 28, 640 So.2d at 253.

Closely related to the principle that "the well-pleaded facts in the petition must be accepted as true," our ultimate task becomes a determination of "whether, in the light most favorable to the plaintiff[s], and with every doubt resolved in the plaintiff[s'] favor, the petition states any valid cause of action for relief." **Scheffler**, 06-1774 at 5, 950 So.2d at 647, *citing* **Fink**, 01-0987 at 4, 801 So.2d at 349; **City of New Orleans**, 93-0690 at 28, 640 So.2d at 253; **Ramey**, 03-1299 at 8, 869 So.2d at 119.

Certainly, the parties hold differing positions as to what this court's ultimate view of the petition should be, but the parties appear to agree on one central point: whether a cause of action exists depends greatly upon whether we find Mineral Code art. 122 provides for, bars, or is instead indifferent to the existence of a cause of action. The lower courts also framed their inquiries by the existence of a lessor/lessee relationship, which is the topic of Mineral Code art. 122.

Although our review is *de novo*, we are faced with essentially universal recognition that this case significantly hinges upon Mineral Code art. 122. Because our own research provides no countervailing reason, we likewise start our analysis with Article 122. Therefore, and consistent with our civilian methodology, we begin-as we must-with the text of Article 122, which provides:

> A mineral lessee is not under a fiduciary obligation to his lessor, but he is bound to perform the contract in good faith and to develop and operate the property leased as a reasonably prudent operator for the mutual benefit of himself and his lessor. Parties may stipulate what shall constitute reasonably prudent conduct on the part of the lessee.

La. R.S. 31:122.[3]

## Fraud by Silence and Article 122

As a general observation, the first sentence of Article 122 is structured such that a mineral lessee is relieved of certain obligations, while other obligations are imposed. The appellate court specifically noted that the defendants, as lessees, were relieved of fiduciary obligations to the plaintiffs/lessors under Article 122. **McCarthy II**, 49,301 at 16, 151 So.3d at 158 ("The law is clear that Evolution is neither a fiduciary nor a trustee."). Even so, stemming from the obligation imposed by Article 122 for a lessor "to develop and operate the property leased as a reasonably prudent operator for the mutual benefit of himself and his lessor," the appellate court found the petition stated a cause of action for "fraud by silence." **McCarthy II**, 49,301 at 15-16, 20, 151 So.3d at 158, 160. We respectfully disagree with the thoughtful analysis of our appellate court colleagues.

---

[3] The Louisiana Mineral Code is contained within Title 31 of the Louisiana Revised Statutes. For ease of reference, citations to individual articles of the Mineral Code will be made by simply referring to the individual article, *e.g.*, Article 122. Unless otherwise noted, all references to codal articles are those contained within Title 31, *i.e.*, within the Mineral Code.

As alleged in the petition, defendants gained information about the characteristics of reservoirs in the Delhi field during the defendants' mineral operations. Defendants used that information to negotiate a sale of mineral interests to Denbury. Defendants offered to purchase from plaintiffs–and eventually did purchase–plaintiffs' royalty interests without informing plaintiffs of the arrangements with Denbury, the profits defendants would realize from reselling plaintiffs' interests to Denbury, or even the greatly increased value of plaintiffs' interests.

Accepting these allegations as true, the petition fails to articulate a cause of action for fraud by silence. Although La. C.C. art. 1953 addresses the possibility that "[f]raud may … result from silence or inaction," in order "[t]o find fraud from silence or suppression of the truth, there must exist a duty to speak or to disclose information." **Greene v. Gulf Coast Bank**, 593 So.2d 630, 632 (La. 1992). Plaintiffs' petition is devoid of allegations of any relationship of confidence with the defendants.[4] Instead, Plaintiffs argue that a duty arose for defendants to disclose information "through operations of the lease." However, under Article 122, the duty of a mineral lessee to develop and operate as a reasonably prudent operator has no component of disclosing the information about which plaintiffs complain. Concerning lessees, there are four duties emanating from Article 122, which have been summarized as:

> (1) the obligation to develop known mineral producing formations in the manner of a reasonable, prudent operator; (2) the obligation to explore and test all portions of the leased premises after discovery of minerals in paying quantities in the manner of a reasonable, prudent operator; (3) the obligation to protect the leased property against drainage by wells

---

[4] The petition points to a chronology that undercuts the very notion that any relationship of confidence existed between the parties. In paragraph 11, the petition indicates that the leases were not negotiated with the defendants, but were instead confected "with the defendants' predecessor-in-interest." In paragraph 21, the petition indicates those negotiations took place "about sixty years" prior to the events at issue.

10

located on neighboring property in the manner of a reasonable, prudent operator; and (4) the obligation to produce and market minerals discovered and capable of production in paying quantities in the manner of a reasonable, prudent operator.

Article 122, cmt.

As can be readily seen, disclosure of information is nowhere mentioned among these duties. The appellate court recognized as much: "Certainly, the information of the lessee gained through geological data and technical developments involving the lease premises remains proprietary information." **McCarthy II**, 49,301 at 16-17, 151 So.3d at 158. Nevertheless, the appellate court inferred from plaintiffs' allegations that at the time defendants were negotiating with Denbury, defendants were in "passive breach" of their duty to reasonably develop mineral production. *Id.*, 49,301 at 19, 151 So.3d at 159. From this inference, the appellate court further surmised that defendants "could then be obligated to inform [their] lessors and not remain silent on [their] plans" for conducting business with Denbury. *Id.*

The appellate court's reasoning, however, is at odds with both the law and the petition. In paragraph 25 of the petition, plaintiffs allege that additional production could be obtained only by having Denbury, the eventual lease purchaser, "redevelop" the Delhi Field Unit. Plaintiffs also elaborate in paragraph 25 that Denbury "is the leader in the Gulf Coast region" for "a special tertiary oil recovery method." Nowhere does the petition allege the defendant lessees are liable for not possessing the "special" technology possessed by Denbury and needed to increase production.[5] Thus, in the appellate court's inference that the petition contends defendants were in

_____

[5] In their brief, plaintiffs acknowledge that the petition contends that Denbury, which is not a party to this lawsuit, rather than the defendants here, would redevelop the property through the use of CO2 enhanced oil recovery technology. Compare **Wadkins v. Wilson Oil Corp.**, 6 So.2d 720, 724 (La. 1942) (pre-dating enaction of the Mineral Code, this court ruled "the defendant had failed to fulfill its implied obligation and covenant to further develop the property by drilling new wells with the modern process which had proved so successful on other leased properties adjoining and in the vicinity of the property in question.").

"passive breach" of their duty to develop production, the appellate court has derogated from the principle that "[t]he exception [of no cause of action] is triable on the face of the pleadings." **Scheffler**, 06-1774 at 5, 950 So.2d at 646. While it is true that analyzing an exception of no cause of action requires reading a petition such that "every doubt [is] resolved in the plaintiff's favor," (**Id.**, 06-1774 at 5, 950 So.2d at 647) that standard of review does not countenance a court inferring conclusions which are contrary to the facts as pled.

Although the appellate court has erred in finding a cause of action for fraud by silence in this case, the appellate court's analysis is not without lessons for the reach of Article 122. The appellate court noted that in **Emerson v. Shirley**, 175 So. 909 (La. 1937), this court reversed a district court's finding of no cause of action for an allegedly fraudulent purchase of a royalty interest. The plaintiff in **Emerson** alleged that his former partner interposed a friend to purchase plaintiff's interest for $500, but that the former partner knew the value to be $40,000. Here, the appellate court reasoned that notwithstanding Article 122 disavows a fiduciary relationship, "[i]f the nature of the relationship rises to a certain level, the **Emerson** ruling recognized a duty to speak to prevent fraud." **McCarthy II**, 49,301 at 20, 151 So.3d at 159. The appellate court left as an open question how that "certain level" could be reached. The answer, however, may be provided by the plain language of Article 122, the last sentence of which states: "Parties may stipulate what shall constitute reasonably prudent conduct on the part of the lessee."

From the language just quoted from Article 122, it appears that parties to mineral leases may contractually impose a duty for a lessee to disclose information, such as the information plaintiffs complain was not provided to them when defendants negotiated to purchase plaintiffs' royalty interests. The petition here,

however, is devoid of an allegation that the parties had contractually imposed such disclosure by the lessees.

We are careful to note that, although we find no cause of action for fraud by silence here, we do not foreclose the possibility of such a cause of action if the parties contractually supply additional duties as suggested by the last sentence of Article 122. In the case before us, where the petition provides no such indication that the parties contractually agreed to the lessee having additional duties, we are confined to rule on this case under the default duties of Article 122, which preclude a cause of action against a lessee for fraud by silence in a purchase of rights by the lessee.

Stated simply, as to the allegations of the petition before us, the default rules of Article 122 are addressed to mineral development operations, not to buying and selling mineral rights. In the transaction at issue, the lessee had no duty to disclose its plans because Article 122 relieves a lessee of fiduciary duties to the lessor, and because the operational portions of Article 122 do not impose disclosure obligations on the lessee. To hold otherwise, as the appellate court did, that the fact of a lessor/lessee relationship reaching a "certain level" can require disclosures of the facts plaintiffs complain were omitted, is to essentially erase this entire clause from Article 122: "A mineral lessee is not under a fiduciary obligation to his lessor ...." When faced with such a straightforward, unequivocal expression of law as that just quoted from Article 122, courts are bound to observe it. See La. C.C. art. 9 ("When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written ...."); see also La. R.S. 1:4 ("When

13

the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.").[6]

In sum, given the facts as pled and analyzed under the default duties of Article 122, we find no cause of action for fraud by silence. In the negotiations and ultimate purchase of royalty interests by the mineral lessee as alleged in the petition, a recent treatise explains these practical effects of the default rules of Article 122, which our analysis above supports: "Thus, he [the lessee] is not required to place the interests of the lessor ahead of his own, nor is he bound by the traditional fiduciary restraints of full disclosure, lack of self dealing, or prohibition against profiting from the affairs of one's principal." PATRICK H. MARTIN, LOUISIANA MINERAL LAW TREATISE §1003 (2012).

### Fraud by Affirmative Misrepresentation and Article 17 and Article 122

The appellate court determined that a cause of action exists under Article 122 not only for fraud by silence/omission, as just analyzed, but also that a cause of action exists under Article 122 for fraud by affirmative misrepresentation. The appellate court found the following allegations in the petition were significant:

> The plaintiffs' allegations go beyond a mere unilateral and erroneous assessment of the value of their 1/8th lease royalty. Plaintiffs claim that Evolution used the past 16 years of production to misrepresent the present value of the future royalties. The alleged emphasis by Evolution on the past while withholding its special knowledge of the planned future production is claimed as a misrepresentation of the truth concerning the present fair value of the royalty rights.

**McCarthy II**, 49,301 at 12-13, 151 So.3d at 155-156.

---

[6] Parenthetically, we note that "[t]he provisions of [the Mineral] Code are supplementary to those of the Louisiana Civil Code and are applicable specifically to the subject matter of mineral law." Mineral Code Article 2. Under Article 2, we are legislatively authorized to draw on principles outside of the Mineral Code, such as La. C.C. art. 9 and La. R.S. 1:4, because "[i]f this [Mineral] Code does not expressly or impliedly provide for a particular situation, the Civil Code or other laws are applicable."

The appellate court explained that "Plaintiffs allege that Evolution misdirected their attention to the prior production which was largely irrelevant to the assessment of the present value of their 1/8th lease royalty." **McCarthy II**, 49,301 at 15, 151 So.3d at 157. The appellate court reasoned that defendants knew the actual worth was much higher and that plaintiffs could not ascertain the worth: "Evolution allegedly had the exclusive means of assessing the value of the royalty interest and knew of the error by plaintiffs." *Id.*[7] The appellate court prefaced its finding of a cause of action with Evolution's "leasehold duty of the reasonably prudent operator," and the appellate court relied greatly on this provision in the Civil Code of 1870:

> A false assertion as to the value of that which is the object of the contract, is not such an artifice as will invalidate the agreement, provided the object is of such a nature and is in such a situation that he, who is induced to contract by means of the assertion, might with ordinary attention have detected the falsehood; he shall then be supposed to have been influenced more by his own judgment than the assertion of the other.

La. C.C. art. 1847(3) of the Civil Code of 1870.

The appellate court recognized that Mineral Code Article 17 excludes the cause of action stemming from what the Civil Code describes as "lesion beyond moiety." Lesion beyond moiety is explained in Article 2589 of the current Civil Code thus: "The sale of an immovable may be rescinded for lesion when the price is less than one half of the fair market value of the immovable. Lesion can be claimed only by the seller and only in sales of corporeal immovables." As to mineral rights, however, Article 17 provides: "A sale of a mineral right is not subject to rescission for lesion beyond moiety."

---

[7] Or, as the petition indicates: The information that the defendants, as lessees, improperly withheld was data that would not have been readily available to the plaintiffs from any source other than the defendants.

Notwithstanding the prohibition of lesion in Article 17, the appellate court ruled that plaintiffs could circumvent the prohibition because "Plaintiffs allege that Evolution deliberately misled them about the value of their royalty interest by directing their attention to the past decline of oil production while omitting Evolution's understanding of the value of the proven reserves recoverable through the impending enhanced recovery project." **McCarthy II**, 49,301 at 9, 151 So.3d at 154. The appellate court explained that the district court's contrary ruling "misses the clear distinction between rescission for fraud as a vice of consent and rescission for lesion by the mere existence of a price deficiency in relation to the fair market value of the immovable." ***Id.*** We respectfully disagree with the analysis of our learned colleagues.

A review of the petition indicates that the plaintiffs complain about the fairness of the price relative to the alleged market value: Defendants, as lessees … made unsolicited offers to purchase the plaintiffs' royalty interests for a price that seemed fair to the plaintiffs based on the knowledge available to them. However, … the defendants knew that the price they were offering was substantially below the true value of the plaintiffs' royalty interests. Earlier in this opinion, we determined that Article 122 did not impose an affirmative duty on the lessees to disclose the information that the plaintiffs complain had been withheld, such as defendants' plans for the mineral interests.[8] Therefore, for present purposes, the relevant question is: what is the legal significance, if any, of the affirmative statement(s) made to the plaintiffs?

---

[8] Because we have already determined Article 122 imposed no duty on defendants to provide the information plaintiffs complain was withheld, we have omitted from the preceding excerpt of the petition allegations pertaining to fraud by silence. As earlier held, such allegations are not actionable.

16

Returning to the allegations of the petition, we observe that plaintiffs indicated that in the way of affirmative statements, the defendants made offers. However, in this context, as a matter of law, an offer to purchase is not a guarantee of value. An offer is–at most–one component of a "contract … formed by the consent of the parties," when consent is later "established through offer and acceptance." La. C.C. article 1927. See also **Haas v. Cerami**, 10 So.2d 61, 64 (La. 1942) (on reh'g) (finding no duty, absent allegation or proof of a fiduciary relationship, forbidding a purchaser of mineral rights from using "inside information" which allegedly would increase the "prospect" of production and hence also increase value of rights purchased). Compare Article 122 ("A mineral lessee is not under a fiduciary obligation to his lessor …."); compare also **Scheffler**, 06-1774 at 5, 950 So.2d at 647 ("A fiduciary relationship has been described as one that exists when confidence is reposed on one side and there is resulting superiority and influence on the other.") (Internal quotations omitted.) Thus, in the absence of a fiduciary duty, plaintiffs' petition fails to establish anything actionable about the affirmative statements of the precise amounts the defendants would pay as part of the defendants' "offers."[9]

Endeavoring to construe the petition in a light favorable to the plaintiffs, we look further to see if plaintiffs have described operative facts which would trigger a

---

[9] In their briefs to this court, the parties greatly dispute whether the "offers" should be analyzed only as described in the Amended and Supplemental Petition, or whether allegations about the offers contained in the original Petition should also be considered. Not specifically in the Amended and Supplemental Petition, but only in their original Petition, did plaintiffs urge that the amounts of the offers were based on 16 years of royalties, instead of being based on the customary 8 years of royalties for declining oil fields, in order to ensure that no purchaser, unaware of the pending $CO2$ enhancement oil recovery project of Denbury Onshore, LLC, would match or outbid. It is unnecessary for us to determine whether the quoted allegations about the prices offered in the original Petition have been incorporated into the Amended and Supplemental Petition, as plaintiffs argue. That is so because even if we were to expand our review into the original petition, its allegations about the prices offered by defendants add nothing to establish a cause of action. As indicated in our analysis of the Amended and Supplemental Petition, we have already determined that allegations relating to the amount of money offered for plaintiffs' mineral rights are not actionable.

cause of action.  See **Scheffler**, 06-1774 at 5, 950 So.2d at 647.  A liberal construction of the petition reveals that the petition additionally focuses on the allegedly inadequate price received for the mineral interests.  This court, however, long ago established that an allegation of inadequate price paid for a mineral interest is the essence of a lesion claim, but is not actionable.  See **Wilkins v. Nelson**, 99 So. 607, 609 (La. 1924).  This court explained that the "injury [of lesion] is founded on its being the effect of implied error or imposition" or being "hardly dealt by" the buyer, whereas the values of mineral rights are speculative, such that their values cannot be gauged by the stable price standards necessary to determine lesion, like the "one half" value recognized for a cause of action for lesion in the sale of an immovable.  *Id.* at 608, citing La. C.C. Article 1861 (1870 ),[10] and **Copley v. Flint**, 1 Rob. 125, 128 (La. 1841)).  This court further explained:

> [T]he inherent nature and character of the right to extract oil and gas from the soil is such as not to be susceptible of having an intrinsic, determinable, and fixable value.  The element which enters into the valuation is too uncertain, conditional, and contingent.  At most any value which may be fixed on the right is contemplative, speculative, and conjectural, not to say fanciful and theoretical.
>
> The seller who sells such rights, and the buyer who buys, does so with a speculative intent, and it is a matter of common knowledge that every real estate owner uses his own judgment in estimating the sale value of his property.  In the admitted speculative nature of the intangible right it is impossible that there could be any fixed and dependable valuation.  The price may be at the very lowest today and by 'leaps and bounds' reach the very peak of prices tomorrow, dependent on the production or nonproduction of oil and gas in the neighboring territory.

**Wilkins**, 99 So. at 609.

Based in part on the reasoning in **Wilkins**, the defendants point to decisions by our colleagues in the federal judiciary, and contend that the plaintiffs' allegations

---

[10]  When applicable, the present Civil Code retains the threshold of "one half of the fair market value of the immovable" for a cause of action for lesion relating to an immovable.  See La. C.C. art. 2589.

about insufficient price, whether at the time of offer or time of sale, are simply disguised–but prohibited–claims of lesion. We agree.

In **Thomas v. Pride Oil & Gas Properties, Inc.**, 633 F.Supp. 2d 238, 243 (W.D. La. 2009), the court dismissed a claim that the price paid for mineral interest was insufficient, explaining:

> In 1974, the State's Legislature codified the jurisprudential rule expressed in **Wilkins** as Louisiana Revised Statute Section 31:17 [Article 17], which clearly recites that "[a] sale of a mineral right is not subject to rescission for lesion beyond moiety." This provision of Louisiana's Mineral Code, to the extent it appears to conflict with Louisiana Civil Code articles 2464 and 2589, trumps: "In the event of conflict between the provisions of th[e Mineral] Code and those of the Civil Code or other laws the provision of this Code shall prevail." LSA-R.S. 31:2 [Article 2].

Recalling our earlier determination in this case that the claims relating to an offer being insufficient are essentially fraud claims, we approve of the following observation: "To pursue a claim for purported deficiency in the value of these lease rights ..., be it in error or fraud, is to pursue a claim for lesion beyond moiety." **Thomas**, 633 F.Supp.2d at 244 (internal quotation and citation omitted). **HMB Interests, LLC v. Chesapeake Louisiana LP**, 2010 WL 3896521 (W.D.La.).

Moreover, in **Cascio v. Twin Cities Dev., LLC**, 45,634 (La.App.2 Cir. 9/22/10), 48 So.3d 341, the appellate court recently recognized many of the same principles articulated in **Wilkins** and **Thomas**. The **Cascio** court rejected a claim to rescind mineral leases granted without the lessor's knowledge that the leases embraced "the Haynesville Shale, which is alleged by plaintiffs to be one of the richest natural gas reservoirs in the country." **Cascio**, 45,634 at 1, 48 So.3d at 342. The **Cascio** court rejected plaintiffs' theory that "because they did not know the land they were leasing was not ordinary land, but land with exceptional qualities (namely

the existence of the Haynesville Shale), this constitutes error that vitiates consent." *Id.*, 45,634 at 4, 48 So.3d at 343.

In the instant case, the appellate court attempts to distinguish **Cascio** on the basis that in **Cascio**, unlike here, there was a "lack of an existing lessor/lessee relationship." **McCarthy II**, 49,301 at 10, 151 So.3d at 154. For their part, the plaintiffs also cite the existence of a longstanding lessor/lessee relationship to refute defendants' suggestion that the appellate court's ruling would lead to a flood of litigation by remorseful mineral rights sellers, even when a seller's claimed mistake is due solely to the seller's purely subjective and unilateral assessment of value. As we have seen, in the instant case, the appellate court's distinction rests on the erroneous proposition that defendants/lessees had a duty to provide plaintiffs with more information than would a typical buyer, such as the sale of the mineral interests to another operator by the defendants/lessees. Therefore, we respectfully disagree with the appellate court's attempt to distinguish the instant case from **Cascio**, and this observation from **Cascio** applies with equal force to the instant case: "[A] claim of error that is asserted regarding the value of a mineral lease is synonymous with a claim of lesion beyond moiety." *Id.*, 45,634 at 6, 48 So.3d at 344.

Thus, whether viewed at the time of offer or time of sale, we find plaintiffs' allegations of insufficient price are claims of lesion, which are barred by Article 17. See also La. C.C. art. 1965 ("A contract may be annulled on grounds of lesion only in those cases provided by law.").

**CONCLUSION**

The appellate court announced a "novel and untested" cause of action against mineral lessees who ultimately purchased their lessors' mineral royalty interests. The cause of action was premised on a duty to disclose to the lessors more information

than would a purchaser who was not a lessee. The appellate court also found its cause of action was based on a duty to disclose to the lessors that the prices offered by the lessee, when measured against the lessees' plans for the mineral reservoir, were inadequate. These duties, according to the appellate court, arose from the lessees' duty to act as a reasonably prudent mineral extraction operator.

We have found, however, that the focus of the plaintiffs' petition is not on the lessee's conduct as a mineral extraction operator. The focus is on the purchase of mineral rights. The duties the appellate court would impose on mineral lessees, when purchasing a lessor's mineral rights, are rejected within the Mineral Code. As we have seen, even predating the legislature's enactment of the Mineral Code, courts recognized that mineral exploration is costly for operators and inherently speculative for all parties involved. By relieving mineral lessees of fiduciary duties to lessors and by exempting mineral transactions from lesion, the Mineral Code appears to promote each party keeping their own counsel on issues related to value, and the law will not step in to relieve a mineral rights seller from a transaction if the seller later regrets the price. No doubt our colleagues on the appellate court were well-intentioned and favored giving the plaintiffs their proverbial "day in court" for the opportunity to show the plaintiffs had somehow been wronged by the mineral purchasers. However, the Mineral Code in this instance reflects an interest in preserving transactions in an otherwise speculative business and, therefore, the appellate court's ruling subverts the following principle: "A judicial decision which enhances the security of transactions will promote compatibility of mutual behavior on the part of those who offer goods for sale and those who offer to buy goods in the marketplace." John A. Dixon, Jr., *Judicial Method in Interpretation of Law in Louisiana*, 42 La. L. Rev. 1661, 1674 (1982). Particularly, when enacting Article 17 and Article 122 of the Mineral Code,

21

the legislature chose not to subject such transactions to judicial rescission and/or damages under the facts plaintiffs have alleged in this case. Thus, plaintiffs have no cause of action.

For the foregoing reasons, the judgment of the appellate court is reversed and the ruling of the district court granting the defendants' exception of no cause of action and dismissing the case with prejudice is reinstated.

**REVERSED**.

SUPREME COURT OF LOUISIANA

NO. 2014-C-2607

JOHN C. MCCARTHY, INDIVIDUALLY AND AS TRUSTEE
OF THE KATHLEEN MCCARTHY BALDEN
TRUST, AND MAJORIE M. MOSS

VERSUS

EVOLUTION PETROLEUM CORPORATION, FORMERLY
KNOWN AS NATURAL GAS SYSTEMS, INC.,
AND NGS SUB CORPORATION

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
SECOND CIRCUIT, PARISH OF RICHLAND

**JOHNSON, Chief Justice, dissents and assigns reasons.**

I respectfully dissent. Under the facts as presented here, the appellate court

correctly ruled that plaintiffs have pled a cause of action to rescind sale of the mineral

lease. In my view, plaintiffs properly raised the issue of fraud which would defeat the

exception of no cause of action, and allow for further discovery and examination of

the evidence surrounding this transaction.

While the Mineral Code does not recognize a fiduciary duty owed by a lessee,

Mineral Code article 122 does impose a duty to act as a reasonably prudent operator

for the parties' mutual benefit. As correctly noted by the court of appeal,

> The good faith duty of Article 122 is more than just the general good
> faith duty of performance in contract. The duty of the reasonably
> prudent operator entails certain demands upon the lessee for the use of
> its geological and technical understanding of the leased premises for the
> continuing exercise of its lease rights "for the mutual advantage and
> profit of both parties" to the lease. As with all real right burdens on
> Louisiana property, **this duty of the reasonably prudent operator
> requires ongoing developmental use of the lease**. Otherwise, as
> expressed in the jurisprudence, "give up the contract." (Emphasis added)

*McCarthy v. Evolution Petroleum Corp.*, 49,301 (La. App. 2 Cir. 10/15/14), 151 So.

3d 148, 158 (internal citations removed). Evolution contracted to act for the mutual

benefit of itself and the land owners. Evolution was under the duty to begin

1

reasonable development of the proven reserves of the Delhi Unit for the parties' mutual benefit. By failing to disclose the Denbury project, Evolution allowed delayed development and operations under the lease in bad faith for its exclusive interests, amounting to a passive breach of its performance obligations under the lease.

# SUPREME COURT OF LOUISIANA

## NO. 2014-C-2607

## JOHN C. MCCARTHY, INDIVIDUALLY AND AS TRUSTEE OF THE KATHLEEN MCCARTHY BALDEN TRUST, AND MAJORIE M. MOSS

### VERSUS

## EVOLUTION PETROLEUM CORPORATION, FORMERLY KNOWN AS NATURAL GAS SYSTEMS, INC., AND NGS SUB CORPORATION

## ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, SECOND CIRCUIT, PARISH OF RICHLAND

**CRICHTON, J., additionally concurs and assigns reasons:**

I agree with the majority opinion in this matter in all respects. I write separately to emphasize that the court of appeal, by creating a legal duty not imposed by the legislature, rendered meaningless the unambiguous language of La. Mineral Code art. 122. Courts should take care not to go beyond the plain meaning of provisions of the Code where those meanings are clear and unambiguous and do not lead to absurd consequences. La. C.C. art. 9.